[Crim. No. 369. Third Appellate District.—July 9, 1917.]

## THE PEOPLE, Respondent, v. CHARLES EVANS, Appellant.

CRIMINAL LAW — APPEAL — FURTHER TRANSCRIPTION OF TESTIMONY—TESTIMONY NOT INTRODUCED AT TRIAL.—On an appeal from a judgment and order denying a new trial in a criminal action, an application under section 1247c of the Penal Code for a further transcription of the testimony will be denied where it appears from the affidavit supporting the application that the testimony sought to be transcribed was not introduced at the trial.

ID.—NEW TRIAL—NEWLY DISCOVERED EVIDENCE—LACK OF DILIGENCE.—A motion for a new trial on the ground of newly discovered evidence is properly denied where counsel filed no affidavits of the witnesses disclosing the nature of their testimony as required by section 1181 of the Penal Code, and admitted that he knew of the witnesses before the trial had closed, but misunderstood the nature of their testimony, obtaining the erroneous impression that it involved character testimony rather than proof of a more substantial nature in its bearing on the case.

ID.—BURGLARY—ACCOMPLICE—INSUFFICIENCY OF EVIDENCE.—In a prosecution for the crime of burglary, a traveling companion of the defendant who received a part of the stolen goods is not an accomplice within the meaning of section 1111 of the Penal Code, as amended in 1915, where it is not shown that she had anything to do with the crime, or that she knew that it was to be committed, or in any way aided or abetted in its commission.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order denying a new trial. W. H. Langdon, Judge.

The facts are stated in the opinion of the court.

A. L. Johnson, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant, Charles Evans, a colored man, jointly with three other persons, to wit, John Mackie, Toney Paresi, and Parthenia Hughson, a colored woman, was informed against by the district attorney of Stanislaus County for the crime of burglary. Evans was given a separate trial,

which resulted in his conviction of the crime as so charged, and he prosecutes this appeal from the judgment and the order denying him a new trial.

A proposition which should first be disposed of is involved in the application of the defendant for a "further transcription of the testimony," said application being made under section 1247c of the Penal Code, and supported by the affidavit of the attorney for the accused.

Said affidavit reads, in part: "The defendant requests that all the phonographic reporter's notes be transcribed in the case against Charles Evans, and also the testimony of the co-defendants, Paresi, Mackie, and Stella Huston in the trials of Toney Paresi and John Mackie. That the phonographic reporter of said court, N. E. Leak, Esquire, failed and neglected to transcribe 'the testimony of the co-defendants, Paresi, Mackie, and Stella Huston in the trials of Toney Paresi and John Mackie,' although asked for in said application and not excepted to by the district attorney; that the final work of transcribing said notes and typewriting the same was performed by Mr. Leak's assistant at a time when said Leak was in the Sierra Nevada mountains on a vacation trip, and incapable of being reached by any form of communication before the statutory time had elapsed for filing said transcription with your Honorable Court. That, therefore, this deponent relying upon section 1247c of the Penal Code of the state of California hereby makes this application for a further transcription of the testimony in said case, namely the testimony of John Mackie, Toney Paresi, and Stella Huston, and this deponent further states that in his belief such testimony is expedient and necessary for the prosecution of the appeal in the above entitled action; and further that the omission of the testimony of these three witnesses, upon which new evidence Toney Paresi and John Mackie, codefendants of this defendant were acquitted, is absolutely necessary to properly present defendant's case to this court."

Thus it will be noticed that the testimony which the defendant asks be transcribed and certified to this court is testimony which was not introduced into this case, either by way of impeachment of the persons whose testimony is desired, in which case it would have been necessary that they should have testified in this case, or otherwise. The only other way we can conceive of in which said testimony might have properly been

brought to our notice would have been by incorporating it into or making it a part of an affidavit filed and used in support of the motion for a new trial on the ground of newly discovered evidence. This course was not adopted, however.

It would seem to be unnecessary to suggest that said testimony, even if the application for its transcription and certification to this court were allowed, could not be considered for any purpose in disposing of these appeals. The application must be denied, and it is so ordered.

There is, however, another point in connection with the order denying a new trial which may now be appropriately considered. In presenting his motion for a new trial, counsel for the defendant stated to the court that he had learned of some other witnesses than those who had testified in the case whose testimony would tend to establish an *alibi* for the accused, and, he admitted, that information concerning said witnesses had been conveyed to him during the progress of the trial and before it had closed, although, he declared, he understood then that those witnesses would merely testify to the good character of the defendant rather than to facts which would go toward showing that his client was in no position or situation at the time the crime was committed to have taken any part in the commission thereof. But counsel filed no affidavits, made by said witnesses, disclosing the nature of the testimony they would give and so showing, if thus he could, that such testimony would be material to the defendant's case and that he could not, with reasonable diligence, have discovered and produced such evidence at the trial. (Pen. Code, sec. 1181, subd. 7.) Besides, it is quite probable that the defendant would have experienced much difficulty on the question of diligence, for it is evident, as the learned trial court suggested, in disposing of the motion, that the defendant must have known, or at least, by the exercise of reasonable diligence, could have known, of the evidence referred to. In fact, as before shown, his learned counsel admitted before the court, when pressing his motion for a trial *de novo,* that the defendant told him of the said evidence, but that he (counsel) misunderstood his client as to the nature of the evidence to which the accused referred, and so obtained the erroneous impression that it involved character testimony rather than proof of a more substantial nature in its bearing upon the case.

Upon the alleged ground of newly discovered evidence the motion for a new trial was properly denied.

It is contended, however, that the evidence does not justify the verdict, and that upon this ground a new trial should have been granted, and that the refusal to grant said motion calls for a reversal.

The facts which the evidence appears to have justified the jury in finding may thus be stated: The hardware store of the firm of Lewis & Byrd, at the town of Newman, in Stanislaus County, was entered at some time between the hours of half-past 8 of the Saturday evening of June 24, 1916, and half-past 8 o'clock of the following morning—Sunday, the 25th of June —and a large number of articles, including shotguns, pocket-knives, razors, and other small articles of hardware, was taken therefrom. Lewis, one of the members of the firm, having been the first person to go to the store on Sunday morning, was the first to discover that the store had been burglarized. On investigation, he found that a window in the rear of the store had been pried open and that evidently entrance into the building had been made through said window.

The local officers were, immediately upon the discovery of the crime, informed of the commission thereof and at once proceeded upon a search for the perpetrators and kept up the search until Monday, the twenty-sixth day of June, when they overtook the defendants at a point two or three miles south of the village of Dos Palos, in said county, and a considerable distance from Newman. The four defendants were traveling together in a spring wagon, drawn by a pair of horses. The officers placed the quartet under arrest and on investigation found the stolen articles in the possession of the defendants. Some of these articles were in an old suitcase belonging to Evans and the woman. Each of the male defendants had on his person, in the pockets of his pantaloons, from two to four of the pocket-knives stolen from the store. The woman had in her possession two of the stolen pocket-knives and a cheap watch, which she claimed were given her by Paresi. The guns, which were also identified as having been taken from the store, were in the wagon, covered over with a quantity of old sacks.

It was shown that, on the morning of the 24th of June, the defendant and his codefendant, Paresi, an Italian, were in the hardware store and there purchased some fish-hooks.

It was further shown that, at about the hour of 11 o'clock on the night of June 24th, a citizen of Newman saw a colored and a white man coming out of an alley near which the hardware store is situated.

For the purpose of using the colored woman as a witness for the people against the other defendants, the district attorney moved to dismiss the charge against her and the motion was granted.

From her testimony it appears that she and Evans were living together and that she was known as "Mrs. Evans"; that, late in the month of May, 1916, she and Evans started out for a fishing trip near Firebaugh, Stanislaus County; that Evans was engaged in gathering and selling old junk, and that, in their meanderings, they came across Mackie and Paresi, who joined them in their travels and went with them to Newman. She further testified that, when they camped for the night, she and Evans slept in the wagon, and that on the night of the burglary, at about 9 o'clock, after Evans had retired, Paresi and Mackie came to the wagon and called for Evans. The latter arose and stepped to the ground from the wagon and the three men for a few moments held a conversation, the purport of which she did not hear; that the three men then left the "camp" together and returned thereto several hours thereafter. The next morning at an early hour, they broke up camp and proceeded on their way. When they reached the suburbs of Los Banos, a small town in Stanislaus County, they stopped, and it was at this place where for the first time the woman saw the articles referred to and where the goods were divided between the parties. She testified that Paresi superintended the matter of division. Among the articles displayed on the ground pending the division were several empty razor boxes. The woman asked how it was that so many empty boxes were there, to which Paresi in effect replied that it was so dark in the store when they were taking the goods that they could not tell precisely what they were getting away with.

The defendant testified in his own behalf, but introduced no other testimony. He declared that, on Saturday, the 24th of June, he went to bed in the wagon near the hour of 8 o'clock P. M. and that he did not leave his bed until aroused from his slumbers at an early hour Sunday morning by Mackie and Paresi, who had apparently just reached the camp, they having been absent during most of the night. This, he said, was

the first he knew of the possession by Mackie and Paresi of the stolen goods. He said that he knew nothing of the fact of the entrance into the store by Mackie and Paresi until then and that, prior to the perpetration of the crime, he did not know that they contemplated or intended committing the act.

The foregoing statement embraces a brief recital of all the facts brought out at the trial.

The defendant claims: 1. That the Hughson woman was an accomplice to the crime, and that there is no other evidence in the record which corroborates her testimony; 2. That, if the defendant is shown by the evidence to be guilty of any crime at all, it is that of receiving stolen property, with knowledge at the time of receiving it that it had been stolen, and not that of burglary.

1. There is no evidence in the record, except the mere circumstance that she was the traveling companion of the other defendants and the circumstance that she received a portion of the stolen property, that Mrs. Hughson had anything to do with the burglary or that she knew that it was to be committed or in any way aided and abetted in its commission. Her own testimony is to the effect that she knew nothing about the crime or of any intention to commit it until after it was committed. It is, though, quite manifest that, when she received the two pocket-knives and some other articles from Paresi and the other two men, she knew that the articles received by her were stolen property, and, of course, in that case, if she was guilty of any crime, it was that of receiving stolen property, then knowing it to have been stolen. If this be true, then under the description of an accomplice as defined by the legislature of 1915, in an amendment to section 1111 of the Penal Code (Stats. 1915, p. 760), she is not an accomplice, assuming, of course, that the evidence sufficiently shows that Evans was a party to the crime of burglary. The amendment referred to reads: "An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

But, even if it were true that Mrs. Hughson was an accomplice of Evans, still there can be no doubt that there was other evidence than that of the testimony of the woman tending to connect the defendant with the commission of the offense charged and corroborative of Mrs. Hughson's testimony.

(Pen. Code, sec. 1111, *supra.*) A brief repetition only of certain circumstances disclosed by the proofs will be sufficient to reaffirm conviction that the verdict is legally well fortified: He, with Paresi, was seen in the store which was entered on the morning of the day the crime was committed. A colored and a white man were seen coming out of an alley near the building entered at a late hour on the night of the burglary. The stolen articles were found in the possession of the defendant and his companions. These circumstances surely corroborate Mrs. Hughson's testimony. Indeed, in our judgment, they not only tend to connect the defendant with the commission of the crime, but are themselves or alone sufficient to support the verdict returned by the jury. With the testimony of Mrs. Hughson, they certainly satisfactorily establish the guilt of the defendant.

No other points are made.

The judgment and the order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.