THE ATLANTA NATIONAL BANK *vs.* BURKE, for use, and *vice versa.*

1. That Burke was himself imposed upon by the forgery by Knapp of the name of Knapp's wife as maker and grantor of a note and deed, would not preclude Burke from complaining of the payment by a bank of a check drawn upon it by Burke in favor of Mrs. Knapp to Knapp, upon the forged indorsement by Knapp of her name upon said check. Nor is it true that, because Knapp's own indorsement was genuine and followed the forged indorsement of his wife's name and he was the last indorser, the bank was not bound to look to the genuineness of her indorsement.

2. When the bank reported to Burke, in a statement of its account with him and return of his bank book with the check in question, that it had paid the money on the check, it appearing therefrom that the money was so paid on the indorsement of Mrs. Knapp though actually paid to Knapp, he being the last indorser, Burke had a right to rely upon the supposition that Mrs. Knapp's indorsement was genuine, there being nothing to put him upon notice that it was forged.

3. The money being in the hands of the bank on general deposit, it was entitled to hold it without payment of interest; consequently Burke could not recover interest thereon from the time the check was improperly paid. The bank not having paid out the money, as between itself and its depositor, it is only chargeable with interest as if the money had still remained in its hands.

October 8, 1888.

Banks. Deposits. Forgery. Indorsement.. Diligence. Debtor and creditor. Interest. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1888.

On January 25, 1884, Burke, acting for Mrs. Cotting, took from R. H. Knapp a promissory note payable one year after date to Mrs. Cotting, and a deed to secure it, both signed by Euphemia Knapp, the wife of R. H.

Knapp, and gave to R. H. Knapp a check payable to Mrs. Euphemia Knapp. This check, with the names of Euphemia Knapp and R. H. Knapp written on the back, was presented at the bank by R. H. Knapp on January 26, 1884, and the money was paid to him. On March 31, 1884, Burke's pass-book was balanced at the bank and, together with his checks to that date (including the one in question), returned to him. On January 25, 1885, the interest on the note was paid to Burke by R. H. Knapp, and a renewal note, payable twelve months after date and signed "E. M. Knapp", was taken in place of the first one. Mrs. Knapp's signature to the notes and the deed, and her indorsement on the check, were forged; but this was unknown both to Burke and the bank for over three years.

On May 7, 1887, suit was brought by Burke against the bank to recover the amount of this check, with interest. He recovered a verdict therefor, with interest from January 25, 1884. A motion for a new trial, made by the bank, was denied on condition that the plaintiff would write off the interest from January 25, 1884, to the date of bringing the suit. This was done "without prejudice." The defendant excepted to the denial of a new trial; the plaintiff to the requirement to write off the interest, except the amount for the year succeeding January 25, 1884, this having been received by Burke of Knapp.

ABBOTT & SMITH, for the bank.

HILLYER & BRO., *contra.*

BLANDFORD, Justice.

1. It is contended by counsel for the bank that, inasmuch as Knapp had palmed off on Burke a forged note

and forged deed purporting to be signed by his wife, Mrs. Euphemia Knapp, Burke is precluded from complaining of the payment by the bank of the check drawn by Burke in favor of Mrs. Knapp, upon the forged indorsement of her name by Knapp. And it is further contended that, inasmuch as Knapp's indorsement was genuine and he was the last endorser, the bank was not bound to look to the genuineness of any preceding indorsement. The cases of Smith *vs.* Mechanics' and Traders' Bank, 6 La. Ann. 610, and Levy *vs.* Bank of America, 24 La. Ann. 220, are cited by counsel for the bank. As to the first of these (Smith *vs.* Mechanics' and Traders' Bank), it appears to us that the case was not well decided by the majority of the court; and the dissenting opinion of Slidell, J., appears to us to embody the correct law of the case. Yet that case has some features in it different from the case at bar, and may be distinguished from the latter. In the other case cited, the proposition is announced that where the last indorsement is genuine, the bank is not bound to look to any prior indorsement. This proposition we cannot concur in. We do not think it is sustained by the decision of any other court in this country. No other case has been shown us in support of it. And yet that case is distinguishable from the present case in this: in that case, the check was made payable to a fictitious person by the depositor, and the person to whom the check was delivered was supposed by the drawer of the check to be the payee, and he obtained the money on the check at the bank; whereas in the present case, the check was made payable to Mrs. Knapp, and Knapp forged her name as indorser, making the check payable to himself and afterwards adding his own indorsement. There is nothing in the present case to take it out of the ordinary rule. Where one

deposits money in a bank on general deposit, the bank immediately becomes the debtor of the depositor for the money deposited, and undertakes, impliedly, to pay that money either to the depositor or to some person to whom he directs it paid, and in order to discharge itself from this liability to the depositor, the bank must pay the money to the depositor or as directed by him. The liability cannot be discharged in any other way. In the present case, Burke, the depositor, drew a check in favor of Mrs. Knapp for a certain amount of money, and the bank did not pay the money to her or to her order, but paid the money to Knapp upon a forged indorsement. How does the bank discharge its indebtedness to Burke? It has not paid the money to Burke, or to the person to whom he directed it paid, or to her order; and it is only in these ways that the bank can be discharged of its liability.

2. Again, it is insisted on the part of the bank that, inasmuch as the bank had made up the account of Burke with the bank, and returned to him the book containing that account, showing the payment of this amount of money to Knapp, which book was retained by Burke for three years before any complaint was made by him, the bank was not put upon due notice of any forged indorsement, and that this was such *laches* on the part of Burke as relieved the bank of liability to him. We think, however, that the fact that the bank reported to Burke in this account that the check was paid to Mrs. Knapp, the payee, relieved Burke from any diligence whatever. He was then under no obligation to look to see whether the check was paid upon a forged indorsement, or not; he had a right to accept this statement of the bank as true, and to rest upon it. The bank in its statement deceived him, and there was nothing in the account to put him on notice that there was a forged

indorsement. On this point the counsel for the bank cites the case of the Leather Manufacturers' Bank *vs.* Morgan, 117 U. S. 96. That, however, is a different case from this. In that case the check drawn by the depositor had been raised in amount, the check as originally drawn had been changed by forgery; hence when the check was returned to the drawer, it was in his power to ascertain by looking at the check that it was a forgery. It was not the case of a forged indorsement, where he had a right to rely upon the statement of the bank that the money was paid as he had directed it paid. In the case cited, the depositor might have discovered the forgery upon looking at the check, and he ought to have looked into it within a reasonable time, and if it was a forgery, ought to have notified the bank, so that the bank could have taken steps to protect itself. Hence the refusal of the court below to give the instructions prayed for by the bank on this subject, was not error.

There were other points made in the case which, in the view we take of it, it is unnecessary to consider here.

3. We affirm the judgment of the court below in requiring the plaintiff to write off the interest. The bank was entitled to hold the money without interest; it was a general deposit; and the bank not having paid out the money, according to the theory upon which this case is decided, the money is supposed to have still remained in the vaults of the bank, and there is no reason why the depositor should have interest on it. Indeed, I have some doubt whether in this case any exception could be taken at all to the writing off of the interest, as the plaintiff wrote it off. He was not bound to write it off, but having written it off, it is right that it should so

remain.   We affirm the judgment of the court below both upon the original bill of exceptions and the cross-bill.