MARKET & FULTON NATIONAL BANK, Appellant, v. ESTATE OF HENRY ETTENSON, Deceased, BENJAMIN PHILLIP, Administrator, Respondent.

**Kansas City Court of Appeals, June 16, 1913.**

1. **BILLS AND NOTES: Delivery: Maker.** A mere delivery for value of a promissory note drawn to the maker's own order imparts no vital force to the instrument but leaves it a nullity in the hands of the holder. And where a note has more than one maker who are not partners and by its terms is drawn to the order of all, it must be indorsed by all.

2. ———: ———: ———. At common law an instrument in the form of a negotiable promissory note made payable to the order of the maker is a mere nullity until it has been indorsed by the maker. And until indorsed by the maker and delivered for value to such payee, there is no promise to pay to the person to whom the maker shall, by indorsement, order payment to be made.

3. ———: ———: ———: **Statute.** Section 10011, R. S. 1909, provides that "where a negotiable instrument is made payable to the order of two or more payees or indorsers, who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others."

Appeal from Buchanan Circuit Court.—*Hon. William D. Rusk*, Judge.

AFFIRMED.

*Spencer & Landis* for appellant.

(1) The original debt being unpaid and there being no defense to the claim, the plaintiff should have judgment. Winsted Bank v. Webb, 39 N. Y. 325; Gerwig v. Sitterly, 56 N. Y. 215; Russell v. Nelson, 99 N. Y. 119. (2) Even if a recovery could not be had on the note in this proceeding, the court will give judgment according to the facts, and to avoid circuity. Moore v. Cross, 19 N. Y. 227.

*Culver & Phillip* for respondent.

(1) By the law merchant a note made payable to the maker's order was a nullity, until negotiated by the indorsement of the maker. Lowrie v. Zunkle, 49 Mo. App. 153; Pickering v. Cording, 92 Ind. 306; Bank v. De Shon, 41 Ark. 337; Smalley v. Wright, 44 Me. 442; Daniels on Neg. Inst. (5 Ed.), sec. 130; Rabasses Succession, 22 So. 767; Scull v. Edwards, 13 Ark. 24; Kayser v. Hall, 85 Ill. 511. (2) For many years this rule of the law merchant was abrogated in Missouri (and New York) by statute, and while that statute was in force notes payable to the maker's order could be negotiated by delivery without indorsement by the maker. O'Dell v. Clyde, 53 N. Y. Supp. 61; Secs. 10, 154, R. S. 1909; Laws 1905, p. 243; Laws 1905, p. 265, secs. 196 and 197. (3) The note is payable to the order of the makers, and both were required to indorse. Ettenson did not indorse and therefore is not liable. Allen v. Bank, 84 N. Y. Supp. 1001; Daniels on Negotiable Inst. (5 Ed.), sec. 684; Ryhner v. Feickert, 92 Ill. 305; Brown's Exec. v. Dickinson, 27 Gratt. 693. (4) Parol evidence cannot vary the terms of a written instrument (which includes a note) nor to make a person liable on a note whose name does not appear thereon. Bank v. Reichart, 101 Mo. App. 242; Kessler v. Clayes, 147 Mo. App. 88; Duncan v. Kirtley, 54 Mo. App. 658; Sparks v. Dispatch Co., 104 Mo. 531; Keck v. Sedalia Brew. Co., 22 Mo. App. 187; 1 Daniels Neg. Inst. (5 Ed.), sec. 303; R. S. 1909, sec. 9989.

JOHNSON, J.—This action originated in the probate court of Clay county on three promissory notes of $1000, $1500, and $2000 respectively, presented by plaintiff for allowance against the estate of Henry Ettenson who died at this home in Clay county on the morning of October 19, 1909. An appeal was allowed to the circuit court from the judgment rendered in

the probate court and the action afterward was sent
to Buchanan county on change of venue. Defendant
paid the first mentioned note before trial. A jury was
waived and the cause was submitted on an agreed
statement of facts, with the right reserved by plaintiff
to introduce in evidence ''so much of the deposition
of Joseph S. Lesser as may be, properly admissible in
evidence.'' The court excluded the deposition and ren-
dered judgment for plaintiff on the note of $1500 and
for defendant on the note of $2000. Plaintiff alone
appealed from this judgment and, therefore, the only
issues before us for determination are those pertain-
ing to the latter note.

The material facts of the case thus may be stated.
J. S. Lesser, president of J. S. Lesser Sons & Com-
pany, a business concern having its principal office at
No. 20 East Twentieth street, New York, and Henry
Ettenson, a merchant of Excelsior Springs in this
State, were lifelong friends, and Ettenson who was a
man of wealth and prominence in the business world
had repeatedly indorsed commercial paper for Lesser
Sons & Company to enable that concern to borrow
money from plaintiff, a New York bank. Two or three
times each year Ettenson visited New York on busi-
ness and while there transacted his business in the of-
fice of Lesser Sons & Company where he had the use
of a desk and office privileges through the courtesy
of his friend. Ettenson had indorsed a negotiable
promissory note for $2000, executed by Lesser Sons
& Company to plaintiff. This note fell due on or
about October 19, 1909, and on October 5th, J. S. Les-
ser wrote a letter to Ettenson, who was in Excelsior
Springs, enclosing a new note to plaintiff to take the
place of the one about to mature and requesting Etten-
son to indorse and return it. Lesser said in the letter:
''You asked me about the amount of your indorsement
that we have. Altogether it is about $4900. You have
also asked me to return the paid notes which I would

gladly do, but you know that we are the makers of the notes, and generally when a note is paid, it belongs to the makers; but if you want it, I will return it in the future. But in the past, when a note was paid, that ended the matter and we destroyed it. You know that a note is always returnable to the maker and not to the indorser.''

In response to this letter Ettenson signed the note, not as indorser, as was his usual course, but as a *maker* and returned it to Lesser. The note was as follows·

New York, October 19, 1909.

''$2000.

''Six months after date we promise to pay to the order of ourselves $2000 at our office 20 E. 20th St. City. Value received.

''HENRY ETTENSON,

''J. S. LESSER SONS & Co.''

On the return of the note Lesser Sons & Co. indorsed on the back: ''Pay to the order of the Market & Fulton National Bank of New York.

''J. S. LESSER SONS & Co.,

''DONALD LESSER, Treasurer.''

And on the afternoon of October 19th, a few hours after the demise of Ettenson in Excelsior Springs, the note was delivered to plaintiff and the old note was surrendered by plaintiff to Lesser Sons & Company. At the time of the delivery of the renewel note neither plaintiff nor Lesser knew of the death of Ettenson. It is agreed by the parties ''that the plaintiff bank would not have delivered up to J. S. Lesser Sons & Company the two thousand dollar note previously held by it on which Henry Ettenson was an indorser had Henry Ettenson's name not appeared on the two thousand dollar note in suit . . . that J. S. Lesser Sons & Company and Henry Ettenson were never partners . . . and that the law of the State of New York at the time the transactions hereinabove refer-

red to were had, relating to and governing notes and the rights and liability of parties thereto and the holders thereof, was the same as the law of the State of Missouri contained in the statutes of the State of Missouri now in force and relating to and governing notes and the rights and liability of parties thereto and holders thereof, including the article of the Missouri statute known as the "Negotiable Instrument Law."

The principal thing in the deposition of J. S. Lesser which the court excluded is his letter to Ettenson from which we have quoted. We shall not go into the subject of the propriety of the exclusion of this evidence for the reason that in the view we take of the case it may be given consideration without affecting the conclusion we have reached that the judgment of the trial court was for the right party. Indeed that evidence is more friendly to such conclusion than to the position of plaintiff, since it shows two things quite clearly, viz., first, that Ettenson, doubtless somewhat piqued over what Lesser said about the relative rights of makers and indorsers respecting the custody of cancelled notes, intentionally deviated from his usual course and signed as maker, putting his name first, so that there might be no question about his right to have the note returned to him when paid and, second, that he gave neither express nor implied authority to Lesser to sign his name as indorser, nor to indorse the note in his behalf, unless it may be said that such authority appears on the face of the note itself. Since we find nothing in the deposition to aid the position of plaintiff, we shall leave that evidence without intimating an opinion upon the question of its admissibility, and shall turn to the note and the circumstances of its negotiation to ascertain whether or not the indorsement by Lesser Sons & Company alone and the delivery of the note to plaintiff in renewal of the old note upon which Ettenson was bound, as indorser, had the effect of imposing the liability of a comaker upon

him. It is not contended by counsel for defendant that the death of Ettenson a few hours prior to the indorsement and delivery of the note constituted a revocation in law of any authority he may be said to have conferred on Lesser to indorse and deliver the note for him. The rule is that "the death of a party is a general revocation of all authorities granted by him whether express or implied." [Smith's Executors v. Wyckoff, 3 Sanf. Ch. (N. Y.) 77.] But if Ettenson signed the note and returned it to Lesser with implied instructions to indorse and deliver it to plaintiff in renewal of the old note and without knowing of his death, plaintiff and Lesser completed the transaction as intended by him, we would hold the defendant estate estopped from invoking the rule just stated. Certainly the estate would not be allowed to receive the benefit of a transaction so apparently authorized and to renounce its burdens.

The position of defendant is that Lesser had neither real nor apparent authority to indorse the note on behalf of Ettenson and that without such indorsement the delivery to plaintiff imparted no vitality to the note but left it as it was before, a mere nullity.

At common law an instrument in the form of a negotiable promissory note made payable to the order of the maker is a mere nullity until it has been indorsed by the maker. A note must have a maker and it must have a payee who is another person than the maker. Until indorsed by the maker and delivered for value to such payee, there is no promise to pay to the person to whom the maker shall, by indorsement, order payment to be made. [Lowrie v. Zunkel, 49 Mo. App. 153; Pickering v. Cording, 92 Ind. 306; Bank v. DeShon, 41 Ark. 337; Smalley v. Wright, 44 Me. 442; Daniels on Negotiable Instruments (5 Ed.), sec. 130.]

This rule was changed by a statute enacted in this State in 1877 (Laws 1877, p. 36) which provided "such negotiable promissory notes, made payable to

the order of the maker thereof, or to the order of a fictitious person shall, if negotiated by the maker, have the same effect and be of the same validity as against the maker, and all persons having knowledge of the fact as if payable to the bearer.''

Construing that statute we held in Lowrie v. Zunkel, supra, that it dispensed with the necessity of indorsement by the maker and that such a note became a valid obligation when negotiated and delivered by the maker for a valuable consideration. We quoted with approval from a New York decision (Plets v. Johnson, 3 Hill, 112) where a similar statute was held to apply to cases where the maker, who is also payee, negotiates the note without indorsement. If this statute were still in force in this State we would hold that since the indorsement of the makers was not essential to a valid negotiation of the note the act of Ettenson in signing as maker and returning the note to his co-maker implied a direction to the latter to negotiate the instrument. But we are of opinion that the statute was repealed by the Negotiable Instrument Law enacted in 1905. True it appears in the Revision of 1909 as section 10175 but it has no proper place among the Negotiable Instrument Laws in force since the Act of 1905. That act contained the express provision that "all acts and parts of acts inconsistent herewith are hereby repealed" (Laws 1905, p. 265, sec. 197), and the statute under consideration is in direct conflict with section 184 page 264 of the act (Sec. 10154, Rev. Stat. 1909) which provides that "where a note is drawn to the maker's own order it is not complete until indorsed by him." The law, therefore, with respect to the subject under discussion stands as it did under the old law merchant. A mere delivery for value of a promissory note drawn to the maker's own order imparts no vital force to the instrument but leaves it a mere nullity in the hands of the holder. And where as here the note has more than one maker who

are partners and by its terms is drawn to the order of all, it must be indorsed by all.

It is said in Daniels on Negotiable Instruments (5 Ed.), sec. 684: "If several persons, not partners, are payees or indorsees of a bill or note, it should be indorsed by all of them, unless it be expressed to be payable to the order of either of them, or to the order of certain ones of them, in which cases their indorsement would suffice. Either one of the joint payees may authorize the other to indorse for him, and an assignment of his interest in the paper from one to the other carries with it such authority. But there is no presumption of law that one may indorse for the other." [See also Allen v. Bank, 84 N. Y. Supp. 1001; Ryhiner v. Feickert, 92 Ill. 305; Brown's Exec. v. Dickinson, 27 Gratt. (Va.) 693; Wood v. Wood, 16 N. J. Law, 428; Foster v. Hill, 36 N. H. 526.]

This rule is embodied in the Negotiable Instrument Law of 1905 in what is now section 10011, Revised Statutes 1909, which provides that "where such an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others." Section 10019, Revised Statutes 1909, relied on by plaintiff was not intended to apply to the subject of giving currency to notes drawn to the order of the makers and is not inconsistent with section 10154.

It follows from these considerations that the note in suit could not be negotiated without the indorsement of Ettenson. The mere fact that he returned it to Lesser could not be taken as conferring authority on Lesser to indorse his name on the note but if it could the authority was not exercised. There is no merit in the argument that the note discloses an intention that it should be payable to the order of Lesser Sons & Company alone. The word "ourselves" refers to the makers. When Lesser sent the note to

Ettenson with the request to indorse it, the word obviously referred to Lesser Sons & Company, but by signing as comaker, Ettenson enlarged its meaning and both Lesser and plaintiff, in accepting the note, took it with the meaning Ettenson thus had given it.

The point that the use of the pronoun "our" in designating the office of Lesser Sons & Company as the place of payment disclosed an intention to make Lesser Sons & Company the sole payee is too far fetched to require serious notice. The negotiation of the note without Ettenson's indorsement was a nullity, at least, as far as the defendant estate is concerned.

The judgment is affirmed. All concur.