## Karsner v. Cooper, Sr.

(Decided May 26, 1922.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Third Division).

1. Bills and Notes—Endorsement—Negotiable Instruments Act.— Under the provisions of section 41 of our negotiable instruments act, which is section 3720b-41, Carroll's Kentucky Statutes, 1922 edition, all of the payees or persons to whose order a note is made payable must endorse it if they are not partners, unless all their names are endorsed by one of them who at the time had authority to do so.

2.  Bills and Notes—Endorsement.—By section 49 of the same stat-
    ute, if a transferee takes a note not properly endorsed by the
    proper prior holders he only gets the title of his immediate trans-
    ferrer with the right to procure his endorsement and does not
    become a holder in due course except from the date of the nec-
    essary endorsement, and this is true although the one failing to
    endorse had no beneficial interest.

3.  Bills and Notes.—Holder in Due Course.—The full purpose of the
    two sections referred to is not solely to transmit title but to also
    furnish the prospective purchaser with an abstract of title, and
    if not complied with the omission acts as a warning to him to in-
    vestigate, which if done would lead to discovery of prior equities,
    if any, existing in some of the parties thereto and renders the
    taking of the instrument under such circumstances an act of bad
    faith so as to let in prior equities, because plaintiff was not a
    holder in due course.

4.  Bills and Notes—Endorsement.—The failure of the transferee to
    obtain the proper endorsements of such an instrument at the time
    of his purchase can not be remedied so as to convert him into a
    holder in due course by obtaining the proper endorsement after
    a knowledge of the facts, since the endorsement will not relate
    back to the time of the purchase but will take effect only from the
    time it was made.

EDWARDS, OGDEN & PEAK and EDWARD BLOOMFIELD for
appellant.

HENRY J. TILFORD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On November 15, 1914, William H. Cooper, Jr., exe-
cuted his note to Alonzo Riley and Cordie B. Riley by
which he agreed and promised to pay them jointly $1,-
350.00 twelve months thereafter. It was made negotiable
and payable at the German Security Bank of Louisville,
Kentucky, and was under our present Negotiable Instru-
ments Act as well as our statute prior thereto, and the
Law Merchant, such a note as a purchaser in due course
and in good faith before maturity would take free from
any equities in favor of prior parties if the instrument
was regular upon its face. Within three or four weeks
after its execution and delivery Alonzo Riley, one of the
payees, endorsed it by writing his name on the back there-
of and delivered it to A. J. Karsner in payment for an
automobile to the extent of $835.00, there having been
paid thereon between the time of its execution and its
transfer the sum of $515.00. His endorsement was in
blank and his transferee immediately negotiated the note

for the unpaid balance to his brother the plaintiff and appellant, C. D. Karsner, which was done by delivery only and according to the proof plaintiff paid full value therefor. Immediately before the endorsement and delivery of the note by Alonzo Riley to A. J. Karsner, and after it had been duly executed and delivered to the payees, Alonzo Riley procured the defendant and appellee, W. H. Cooper, Sr., to sign his name thereto as a joint maker, which signing was actually done by A. J. Karsner, the defendant being unable to write his name; and he was induced, according to his testimony, to consent to the placing of his name anywhere on it through the fraudulent representation by Alonzo Riley that his son William H. Cooper, Jr., had requested it, and which false representations we think the proof abundantly sustains. The payee, Cordie B. Riley, never endorsed the note until long after it was due and after May 16, 1916, when this suit was filed by plaintiff against defendant to recover a judgment for $835.00 interest and cost.

The answer denied the execution of the note with the two affirmative pleas that defendant's signature thereto was procured by fraud, and that there was no consideration therefor. Appropriate pleadings made the issues and upon trial the jury selected to try the case returned a verdict in favor of plaintiff, which the court set aside on a motion made therefor, and at a subsequent trial by the court (a jury being waived) there was a judgment dismissing the petition. Plaintiff thereupon moved to set aside that judgment and to substitute therefor one based upon the verdict of the jury at the first trial, both of which motions were overruled, and plaintiff prosecutes this appeal.

At common law under the Law Merchant, and independently of any negotiable instruments act, the transferee of a note of the character here involved could not and did not obtain the legal title thereto except by endorsement of the payee and by that of subsequent holders, if it had been endorsed to their order, and a holder without such endorsements took it "subject to all the equities vested in prior parties." Thus in Ogden on Negotiable Instruments, page 83, section 96, it is said: "The legal title to an instrument made payable to order can regularly be transferred only by endorsement. The transferee of an instrument made payable to order without indorsement is the equitable owner, and takes it subject to all the equities vested in prior parties." To the same effect are the com-

ments of Mr. Brannan in the third (1920) edition of his work on Negotiable Instruments Law, section 49, on pages 153-155, where cases from many of the courts, both foreign and domestic, are cited and referred to. See also Pavey v. Stauffer, 19 L. R. A. 716; Bishop v. Chase, 79 Am. St. Rep. 515; First National Bank, etc. v. McCullough, 17 L. R. A. (N. S.) 1105, 126 Am. St. Rep. 758; Daniel on Negotiable Instruments, vol. 1, sections 644a and 741; Randolph on Commercial Paper, vol. 2, section 788, and vol. 3, section 1877, and many cases referred to in the notes to the McCullough case. Section 664a of Daniel on Negotiable Instruments, referred to, states the rule thus:

"When an instrument is made payable to 'order' the endorsement of the payee is necessary to transfer the legal title; and the transferee without endorsement takes it as a mere chose in action and must aver and prove the consideration; and he takes it subject to all equities that attached to it in the hands of his transferrer;" while section 1877 of Randolph on Commercial Paper, referred to, says: "Where the purchaser of a bill or note takes it without endorsement, unless it is transferable by delivery, he will be subject to such defenses as are available against the payee."

But, independently of the common law rule, our Negotiable Instruments Act, section 49, now section 3720b-49 1922 Carroll's edition of Kentucky Statutes, says: "Where the holder of an instrument payable to his order transfers it for value without endorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires, in addition, the right to have the endorsement of the transferrer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the endorsement is actually made." And section 3720b-41 of the same statutes says: "Where an instrument is payable to the order of two or more payees or endorsees who are not partners, all must endorse unless the one endorsing has authority to endorse for the others." The note involved here was made payable to the order of two persons and there is no pretense or, at any rate, nothing on the face of the note to show that they were partners; nor is there anything to show, or evidence to prove, that Alonzo Riley had authority to endorse the name of his wife and joint payee on the note, nor did he pretend to do so. When, therefore, plaintiff accepted

the note in the face of and directly contrary to the requirements of section 41 of our Negotiable Instruments Act, it would seem to require no lengthy discussion to demonstrate that, in as much as one of the payees had not in any manner endorsed it, all the rights which plaintiff obtained were those set forth in section 49 of the act, which were the rights in it that Alonzo Riley, the only endorser, had therein, and that because it was not then endorsed by Mrs. Riley (which she did not do till long after it was due), the complete negotiation did not take effect until after its maturity and that plaintiff is not, therefore, a holder in due course. One of the requisites for a holder in due course, according to section 52 of the act, is "that the instrument is complete and regular upon its face," which necessarily means that the transmission of the legal title to the note, as shown thereon, from its inception to its acquisition by the holder, has been *duly* made or done according to the method prescribed for the purpose, whether by custom (Law Merchant), or by statute when there is one. If, therefore, the holder by an inspection of the note at the time he acquires it ascertains or could ascertain that any act necessary to such transmission has been omitted it serves as a warning and as a signal to him to beware and admonishes him to investigate, which investigation should be confined not only to the title of the transferrer but also to the genuineness of the entire instrument as it purports to be on its face. If, then, it appears that the transmission of title has not been made or performed according to the requirements of law enacted or prescribed for the purpose the instrument is not "regular upon its face" and that fact makes the act of the holder in taking it amount to bad faith, which under the provisions of section 3720b-56 of our statute serves to give him notice of any infirmities therein as against any of the parties thereto. Differently stated, when any such omission in the due transmission of title exists, the transmission has not travelled a "due course" (which is that prescribed by law) and the holder does not become one *in* "due course."

It is insisted, however, (a), that Mrs. Riley, according to the record, had no beneficial interest in the note and by reason thereof plaintiff's rights, as a holder in due course, are not affected because of a non-compliance with section 41, *supra,* of the Negotiable Instruments Act, and (b), that if it were otherwise her endorsement after the note became due related back to the time of plaintiff's ac-

quisition of it and for that reason he is a *bona fide* holder and may collect it free from prior equities.

Answering contention (a), it is sufficient to say that it was not the full purpose of the regulations prescribed by the statute for the transfer of such instruments to provide for only the transmission of title, but their observance was also intended to furnish a clear *abstract* of title upon which the transferee could confidently rely and by his purchase become a holder in due course. If, therefore, the regulations for such transfer were not observed that fact would impose upon him the duty to make investigations regardless of the fact that the non-endorsing payee or other proper party had no beneficial interest in the note, and the refusal to do so would operate to charge him with knowledge of such facts as the investigation if made would reveal. The foreign cases cited do not support the opposite contention of plaintiff's counsel, but if they did we would be unwilling to follow them because unsupported by authority and unsound in reason. If such a course had been pursued by plaintiff in this case he would have ascertained the facts to be that defendant was not only fraudulently procured to place his name on the note but also that there was no consideration whatever therefor. He was paid nothing to do so, nor did plaintiff decline to accept it without his signature either as maker, endorser or guarantor, since it is proven without contradiction that plaintiff had no *actual* knowledge of the note till he bought it nor of any of the facts connected with the placing of the names thereon, or its execution until long after it was presented to and purchased by him.

The court, in the case of Pavey v. Stauffer, *supra,* in its response to the petition for rehearing, effectually answered contention (b), by saying: "A careful examination of the authorities has saitsfied us that a subsequent indorsement of a piece of commercial paper, after maturity, or notice of the existence of offsets of the maker against the payee, transfers the equitable, but not the legal title, . . . not effectuating an anterior, imperfect transaction, or excluding equitable defenses that had become available in the meanwhile. To this effect is the great weight of authority, English and American; but we deem it unnecessary to quote from opinions at great length, and will content ourselves by citing a few of the leading cases by title, merely, so as to make them of easy and convenient reference. And first in importance is the

case of Whistler v. Forster, 14 C. B. N. S. 248, upon which all subsequent opinions have been mainly predicated. Bingham v. Goshen, Nat. Bank, 118 N. Y. 349; Lancaster Nat. Bank v. Taylor, 100 Mass. 18, 97 Am. Dec. 70; Southard v. Porter, 43 N. H. 379; Clark v. Whitaker, 50 N. H. 474, 9 Am. Rep. 286; Haskell v. Mitchell, 53 Me. 468, 89 Am. Dec. 711; Gilbert v. Sharp, 2 Lans. 412; Savage v. King, 17 Me. 301; Omaha Nat. Bank v. Walker, 5 Fed. Rep. 399; Spinning v. Sullivan, 48 Mich. 9, 1 Am. Rep. 71; Minor v. Bewick, 55 Mich. 491; Central Trust Co. of New York v. First Nat. Bank of Wyandotte, 101 U. S. 68, 25 L. Ed. 876; 2 Randolph Com. Paper, pp. 449, 450; Dan. Neg. Inst. 4th Ed. p. 737, section 745.'' In the original opinion the court had decided otherwise which was based upon a dictum in Mr. Tiedeman's work on Commercial Paper, but which was found to be unsupported by either authority or sound reasoning.

Since, therefore, the evidence shows beyond question that the name of defendant to the note was wholly without consideration and was obtained by fraud, and that under the proven circumstances plaintiff was never a holder of it in due course, the court properly rendered judgment dismissing his petition, and it is therefore affirmed.