No. 31,085.

The First National Bank of Garden City, *Appellant,* v. Thomas L. Daniel, *Appellee.*

.(20 P. 2d 488.)

Opinion filed April 8, 1933.

*C. E. Vance, Clifford R. Hope* and *A. M. Fleming,* all of Garden City, for the appellant.

*H. O. Trinkle,* of Garden City, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action by the holder of a check against the maker. The defense was lack of proper indorsement. At the close of the evidence the trial court sustained defendant's motion for judgment in his favor upon the pleadings and all the evidence. Plaintiff has appealed.

The petition alleged that plaintiff is a national bank doing business at Garden City; that the defendant, Thomas L. Daniel, was in the grain business at Deerfield, Kan.; that about July 23, 1931, defendant purchased from Isaac Young and W. H. Foster a quantity of wheat, for which he became indebted in the sum of $202.06, and in payment therefor executed his negotiable check for that amount, drawn on the Deerfield State Bank, in which check the payee was designated as "Young & Foster," and delivered the check to Isaac Young; that about July 23, 1931, Isaac Young indorsed the check as follows: "Young & Foster, by Isaac Young," and sold and delivered the same to plaintiff, who paid Young the sum of $202.06 therefor; that plaintiff duly presented the check to the Deerfield State Bank for payment, but the bank refused payment, at defend-

ant's request, although he had funds on deposit in the bank sufficient to pay the same; that both Isaac Young and W. H. Foster were interested in the wheat sold defendant for which the check was issued, but plaintiff did not know the exact interest of each of the parties in such wheat, but alleged that their interests therein were known to defendant at the time the check was issued; that Isaac Young and W. H. Foster were not partners, or engaged in business as a firm or otherwise under the name of Young & Foster at the time the check was issued, which fact was then known to defendant but was not known to plaintiff at the time it became the owner thereof. A copy of the check is attached, and the prayer is for judgment for the amount of the check, with interest.

The answer admitted plaintiff's corporate capacity and business; that defendant was engaged in the grain business; that the check in question was issued by him in payment of wheat which he had purchased from Isaac Young and W. H. Foster; that the check was made payable to "Young & Foster;" that he had funds in the Deerfield State Bank sufficient to pay the check at the time it was drawn and when presented, and that he requested the bank not to pay the check; denied that Isaac Young in due course negotiated the check to plaintiff and that plaintiff became the owner thereof; alleged the wheat sold to defendant by Isaac Young and W. H. Foster for which the check was issued in payment was owned jointly by Isaac Young and W. H. Foster, and that the check was their joint property; that Isaac Young and W. H. Foster are not and never have been partners; that the check has not been indorsed by W. H. Foster, and that he did not authorize anyone to indorse the check for him; that his right, title and interest in the check have not been legally transferred by indorsement or otherwise to plaintiff, and for this reason he caused the bank on which the check was drawn to refuse payment thereof. It is further alleged that at the time plaintiff received the check and paid for the same it knew that Isaac Young and W. H. Foster were not partners, and that Young had no authority to indorse the check for and on behalf of Foster. The reply was a general denial.

The facts as disclosed by the evidence are not seriously controverted and may be stated as follows: W. H. Foster was and had been for many years a resident of Garden City. He transacted his banking business at the plaintiff bank and was well acquainted with

its active managing officers. In 1928 he sold land which he owned to Isaac Young on the crop-payment plan. He had never been in partnership with Young. In 1931 Young harvested wheat he had raised on this land and took the same to defendant's elevator at Deerfield, twelve miles west of Garden City, where it was sold. Foster had an interest in this wheat—in fact, his interest amounted to almost all of it. On July 23, 1931, in payment for the wheat, the defendant Daniel issued his check, payable to the order of Young & Foster, and delivered the check to Young. At the time he made this check defendant was well acquainted both with W. H. Foster and with Isaac Young, and he issued the check in payment of "wheat grown by Mr. Young on Foster's land, as I understood it." On the next day Young took this check to the plaintiff bank at Garden City, where he had an account, indorsed it "Young & Foster, by Isaac Young," and deposited it to his credit in his personal account at plaintiff bank. W. H. Foster did not know the check had been issued and never authorized Isaac Young to indorse any check for him. Plaintiff's cashier, who received the deposit, assumed Isaac Young had authority so to indorse the check and he credited the amount of it to Isaac Young's personal account. It seems the bank had no account under the name of Young & Foster, and that its cashier made no inquiries concerning the payees of the check or the right of Isaac Young to indorse it and to receive credit for it as he did. Plaintiff promptly sent the check through the usual channels for payment. When it reached the Deerfield State Bank, on which it was drawn, its cashier observed the indorsement, questioned whether that would be satisfactory to Mr. Daniel, the maker, inquired of him if the indorsement were satisfactory, was informed that it was not, and was instructed by Mr. Daniel not to pay the check, and he returned the same to the plaintiff, through the clearing house, without protest. Plaintiff mailed the check back with the request that it be paid or protested. It was protested on August 8. In the meantime, and within two days after he had deposited this check, Isaac Young drew all of his deposit from the plaintiff bank, except sixteen cents, and left the country.

A section of our statute (R. S. 52-412 [§ 41 N. I. L.]) pertinent to the matter reads as follows:

"Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others."

In this case both the plaintiff and the defendant alleged that Young and Foster were not partners, and the only evidence touching that question is to the same effect. Here both Young and Foster were named as payees. The cases are uniform in holding in conformity to the plain language of the statute. (*Kaufman v. State Savings Bank*, 151 Mich. 65, 114 N. W. 863, 123 Am. St. Rep. 259, 18 L. R. A., n. s. 630; *Allen v. Corn Exch. Bank*, 84 N. Y. Supp. 1001; *First Nat. Bank v. Gridley*, 98 N. Y. Supp. 445; *Glens Falls Indemnity Co. v. Chase Nat. Bank*, 249 N. Y. Supp. 686; *Bank v. Bank*, 197 N. C. 526, 150 S. E. 34; *Fink v. Scott*, 105 W. Va. 523, 143 S. E. 305, and, on second appeal, 152 S. E. 3; *Crahe v. Mercantile Savings Bank*, 295 Ill. 375, 129 N. E. 120; *Bank v. Phillip, Admr.*, 172 Mo. App. 404, 158 S. W. 448; *Johnson v. Watland*, 208 Ia. 1370, 227 N. W. 410; *Karsner v. Cooper, Sr.*, 195 Ky. 8, 241 S. W. 346, 25 A. L. R. 159, with cases collected on necessity of indorsement by all payees.)

In Paton's Digest, § 2615, the question asked was:

"Should a bank accept for deposit in the personal account of A a check payable to 'A and B,' and indorsed 'A and B, per A'? Opinion: Where a check payable to A and B, who are not partners, is indorsed 'A and B, per A,' and is offered for deposit to the credit of A's personal account, the bank, before accepting the deposit, should be satisfied that B has authorized A to make such indorsement. Where A and B are partners the general rule is that in the case of a trading or commercial firm any member has implied authority to indorse and transfer paper by indorsement in the firm name, and such transfer may be made to himself. Such authority is not implied in the case of a nontrading firm. (See full text, 2615a.)"

An extended discussion of this is given under section 2615a, where the facts stated are quite like those in the case before us.

Our own court, in the case of *Voris v. Schoonover*, 91 Kan. 530, 138 Pac. 607, had occasion to say:

"Construing this section with subdivision 4 of section 15 (R. S. 52-208 [§ 8 N. I. L.]), a note payable to 'A *and* B' must, if the payees are not partners, be indorsed by both, but if payable to 'A *or* B,' the order to pay is complete on the indorsement of either." (p. 531.)

Appellant argues this statute is not applicable, because the Christian names of the payees were not used as well as the surnames, and contends that the use of the surnames only, with the conjunction "and," indicates a partnership. The same contention was made in *Fink v. Scott,* supra, where the note was payable to the order of Lyda & Ridinger and was indorsed "Lyda & Ridinger, by C. F.

Lyda," and below, "C. F. Lyda." In disposing of the contention that this indicated that the payees were partners the court said:

"The mere fact, however, that a note has been made to two or more parties jointly will not raise the presumption of a partnership existing between them." (*Fink v. Scott*, 105 W. Va. 523, 526.)

Citing *Kaufman v. State Savings Bank*, supra, in which case, however, Christian names or initials were used as well as surnames. But the statute above quoted makes the *fact* of partnership controlling rather than a *presumption* or *inference* with respect to partnership; and we can see how it must be so in order to be of any value. Partnership, being a relation between persons created by contract, the parties may choose any name in which to conduct the partnership business. (47 C. J. 736; 20 R. C. L. 803.) To attempt to outline by statute what words, or combination of words, would or would not indicate a partnership would be futile. Under the rule laid down by the statute, when there are two or more payees who are not *in fact* partners all must indorse unless the one indorsing has authority from the others to indorse for them. It is clear that the names of two persons were used as payees in the check given by defendant; hence, it is essential that both of them should indorse it if they were not partners, and it is conceded they were not. It is not contended that anyone connected with this case was misled as to who was meant by the Young & Foster named as payees; hence, the payees were named, or indicated, with reasonable certainty, as required by R. S. 52-208.

Appellant contends: (1) That the names of the payees as used tend to indicate a partnership, and (2) if no partnership between the payees existed the instrument was payable to bearer under R. S. 52-209 and needed no indorsement, citing *Ort v. Fowler*, 31 Kan. 478, 2 Pac. 580. In that case the maker of a promissory note, payable to the order of Wilson, Parks & Co., was advised that the payee was a partnership. The evidence disclosed that there was no such partnership. The court held:

"Where a party executes a note to the order of a fictitious firm, and thereafter the holder indorses the note in the firm's name, a *bona fide* indorsee may recover against the maker, and this notwithstanding the latter was ignorant of the fact that the firm name was fictitious." (Syl. ¶ 3.)

There are several reasons why this theory is not applicable here. In the first place there was no representation to plaintiff, or its cashier, or to anyone else, that Young and Foster were partners,

made by the defendant in this case, or by Isaac Young, or by anyone else, unless it can be said that the way the names were written in the check by defendant indicated or raised a presumption that they were partners, and for reasons above stated that position cannot be maintained. In the second place our statute has been materially changed since that decision was rendered in 1884. R. S. 52-209 [§ 9 N. I. L.], adopted in 1905, provides:

"The instrument is payable to bearer . . . or (3) when it is payable to the order of a fictitious or nonexisting person, and such fact was known to the person making it so payable."

Under that statute is was held, in *United Workmen v. Bank*, 101 Kan. 369, 166 Pac. 490:

"Under the third subdivision of section 6536 of the General Statutes of 1915 (R. S. 52-209), a negotiable order for the payment of money must, to make it payable to bearer, be knowingly drawn payable to a nonexistent person."

See, also, *American Exp. Co. v. Peoples Sav. Bank*, 192 Ia. 366, 181 N. E. 701; *Boles v. Harding*, 201 Mass. 103, 87 N. E. 481; *American Hominy Co. v. Millikin Nat. Bank*, 273 Fed. 550; *Robertson Banking Co. v. Brassfield*, 202 Ala. 167, 79 So. 651; and cases annotated on this point in 22 A. L. R. 1228 and 52 A. L. R. 1326.

Appellant suggests that, this being an action for the recovery of money, it was entitled to a trial by jury. There are no controverted facts in this case material to the decision. Defendant's motion was for a judgment on the pleadings and all the evidence admitted, all facts well pleaded by plaintiff, and all fair inferences favorable to plaintiff to be drawn therefrom (*Fielding v. Alkire*, 124 Kan. 592, 597, 261 Pac. 597); and, like a demurrer to evidence, it admitted all inferences favorable to plaintiff to be reasonably drawn therefrom (49 C. J. 668). We have so construed the pleadings and the evidence in passing upon the case.

The judgment of the court below is affirmed.