35637. FULTON NATIONAL BANK OF ATLANTA *v.* DIDSCHUNEIT.

528

DECIDED JUNE 17, 1955—REHEARING DENIED JULY 14, 1955.

*Smith, Kilpatrick, Cody, Rogers & McClatchey, A. G. Cleveland, Jr., Hugh Dorsey, Jr.,* for plaintiff in error.

*Spalding, Sibley, Troutman & Kelley, Griffin B. Bell,* contra.

QUILLIAN, J. ■ The relationship between a bank and its depositors is that of debtor and creditor. "Where one deposits money in a bank on general deposit, the bank immediately becomes the debtor of the depositor for the money deposited, and undertakes, impliedly, to pay that money either to the depositor or to some person to whom he directs it paid, and in order to discharge itself from this liability to the depositor, the bank must pay the money to the depositor or as directed by him." *Atlanta National Bank* v. *Burke,* 81 *Ga.* 597, 599 (7 S. E. 738, 2 L. R. A. 96).

It is the contention of the bank that a joint adventure comes within the provisions of the negotiable instruments law permitting a partner to indorse negotiable instruments on behalf of the partnership. It insists that since the plaintiff admitted that the check was issued to the Atlantic Steel Company and Sanford Company, Inc., in payment of a debt due them as joint contractors, he cannot complain that the bank cashed the check on the genuine signature of one of the joint adventurers.

The law of this State as pronounced by the decisions of both our appellate courts is that the general laws governing partnerships and agency of partners are applicable to joint adventures. *Puckett* v. *Reese,* 203 *Ga.* 716 (48 S. E. 2d 297); *Bowman* v. *Fuller,* 84 *Ga. App.* 421, 426 (66 S. E. 2d 249). This is not only the law of Georgia but is the law in most, if not all jurisdictions of the United States.

There is no English authority in reference to the matter since the doctrine of joint enterprise is of American origin and was unknown to the English courts. They treat joint adventures as a partnership and recognize no difference in the relationship of partners and joint adventurers. Since the advent of the doctrine in this country in the early twenties, the courts throughout the nation have experienced difficulty in distinguishing joint adventures from partnerships. They are so similar in their natures that in almost every conceivable factual situation the law of partnership is precisely adjusted to joint adventures.

Of course, there are statutes and decisions that distinguish the status of partners from the relation of joint adventurers, such as the rule that a corporation cannot become a partner with another, the statutes requiring the registration of some partnerships in order that they may enjoy certain privileges, and the recognition of partnerships but not joint adventures as legal entities. None of these laws or principles are adjusted to the issues of this case, except that they serve to demonstrate that the relationships referred to are not identical. The fact that under our law they are not the same is the very crux of the instant case. This is true because our negotiable instruments law provides that "Where an instrument is payable to the order of two or more payees or indorsees who are not partners, all must indorse, unless the one indorsing has authority to indorse for the others." Code § 14-412.

Recognizing and respecting the firmly fixed and well adjudicated rule pronounced by the Georgia courts that the general laws of partnership are applicable to joint adventures, we must construe the decisions of our courts so holding in pari materia with the Code section above referred to containing the inflexible dogma of the Code that a negotiable instrument payable to persons jointly must be indorsed by them all unless they are partners. So we conclude in obedience to the statute that the check in this case must be signed by both of the payees. Our opinion is fortified by the holdings of the courts of sister States. "The statute above quoted makes the fact of partnership controlling rather than the presumption or inference with respect to partnership; and we can see how it must be so in order to be of any value. Partnership being a relation between persons created by contract, the parties may choose any name in which to conduct the partnership business. . . To attempt to outline by statute what words, or combination of words, would or would not indicate a partnership would be futile. Under the rule laid down by the statute, when there are two or more payees who are not in fact partners, all must endorse unless the one endorsing has authority from the others to endorse for them. It is clear that the names of two persons were used as payees in the check given by plaintiff; hence, it is essential that both of them should endorse if they were not partners, and it is conceded they were not." First National Bank of Garden City v. Daniel, 137 Kan. 423 (20 Pac. 2d 488); Virginia-Carolina Joint Stock Land Bank v. First & Citizens National Bank, 197 N. C. 526 (150 S. E. 34); Karsner v. Cooper, 159 Ky. 8 (241 S. W. 346, 25 A. L. R. 159).

The conceded fact revealed in the record, that while the plaintiff believed there was a joint enterprise, the payees named in the check occupied no such status, leaves no doubt that they were not "partners" or parties to a relationship analogous to that occupied by partners.

■ It is stoutly maintained by the defendant that the check was properly indorsed because: (a) since it was undisputed that Atlantic Steel Company had no interest in the check, it was, under the provisions of the negotiable instruments act, a fictitious party, and hence the check was really payable to Sanford Company alone; (b) that proceeds of the check paid the only debt that the

plaintiff owed; that the debt was due to Sanford Company, and for this reason the plaintiff sustained no damage.

The first proposition is met on the threshold of the case by the very wording of the negotiable instruments law contained in Code (Ann. Supp.) § 14-209 (3) "When it is payable to the order of a fictitious or nonexisting living person . . . and such fact was known to the person making it so payable." It clearly appears from the Code section that in order for the payee to be a fictitious person within the purview of the statute he must either be nonexisting or it must be known to the drawer that he had no interest in the proceeds of the check.

The case of *Atlanta & Lowry National Bank* v. *First National Bank of Carrollton*, 38 *Ga. App.* 768 (145 S. E. 521), is cited and its applicability to this case insisted upon. That case is not only clearly distinguishable upon its facts from this case, but in a negative way supports the proposition that the payee must intend to make the check payable to a party who has no interest in it in order for such person to be characterized as "fictitious". In the *Atlanta Lowry National Bank* case, Dr. Earl Quillian was shown to have a contract with Stutz Atlanta Motor Company to deliver him a certain automobile. He had not contracted with Stutz Motor Car Company of America, Inc., nor was Stutz Motor Car Company of America, Inc., in any way concerned with his contract with Stutz Atlanta Motor Company. All of this was well known to the doctor. Nevertheless he drew a check for a portion of the purchase price of the automobile payable to Stutz Motor Car Company of America, Inc., and delivered it to Stutz Atlanta Motor Company. In this situation the fact was inescapable that he deliberately and intentionally made the check payable to a stranger to the contract who had no right to the check, a "fictitious" person within the meaning of the statute.

In his usual splendid and inimitable fashion the author of that opinion, Chief Justice R. C. Bell, then a valued member of this court, made the proposition perfectly clear, that it was the intention of Dr. Quillian in drawing the check payable to Stutz Motor Car Company of America, Inc., who he knew was not a party to his transaction with Stutz Atlanta Motor Company and in no way interested in the check, which made Stutz Motor Car Company of America, Inc., a fictitious person as defined by the act.

■ We now turn our attention to the question as to whether the plaintiff sustained damages by reason of the bank cashing the check. It is ably argued in interesting brief of counsel for the defendant that the plaintiff took the affidavit signed by H. M. Robertson and R. S. Stradley as complete assurance that the debts owing by Sanford Company, Inc., for material which went into the construction of the roofing installation had been paid, and issued the check on the faith of the affidavit alone. They also earnestly urge that Sanford Company, Inc., was entitled to the proceeds of the check. But a thoughtful and practical review of the situation constrains us to hold the contrary. The plaintiff was only satisfied with the protection, if any, afforded by the affidavit, because he was led to believe by Robertson, manager of Sanford Company, Inc., that Atlantic Steel Company was responsible for debts due for materials, if any existed, and by the consideration that the endorsement of the steel company would afford recognition by it of responsibility for such debts. To say that by a sheer trick or artifice on the part of H. M. Robertson, manager of Sanford Company, Inc., it became entitled to the proceeds of the check would be to legalize what appears from the record to be a fraud on his part.

Sanford Company, Inc., was entitled to be paid for the construction of the building, not when its manager, H. M. Robertson, falsely duped the plaintiff into believing the materials were paid for, but when the debt for the same was in fact satisfied. Of course, if he had succeeded in inducing the plaintiff to make Sanford Company, Inc., the sole payee of the check, then it would have been no concern of the bank, and it would have incurred no liability by cashing it. But he did not accomplish this. What we hold here is, that under the facts revealed by the record in the case, Sanford Company, Inc., was not entitled to the proceeds of the check and the defendant bank was not protected in cashing it.

We have not overlooked the reasoning that the debt which was to be paid by the check was the amount to be paid Sanford Company, Inc., for its part in the construction work. But that debt only incurred upon the completion of the contract and when the debts due for material were paid.

We do not consider the position of the defendant that the funds

were paid to the party entitled to receive them and that they went to pay the exact debt for which the check was drawn.

There is no merit in the further contention of counsel that the imposter doctrine is applicable in this case. The imposter doctrine rests upon the basis of the drawer being deceived as to whom he was making the check payable and it involves a mistake in the payee's identity. No facts in this case support a finding that the parties to whom the check was payable were not the identical payees intended.

The *Atlanta & Lowry National Bank* case is cited as authority for the proposition that when the party who is entitled to a check receives the funds arising from it the drawer is not damaged, whatever lack of formality or technical reason was involved in honoring the check. Again the decision is recognized as a sound statement of the law, but we hold that in this case the party who obtained the funds by cashing the check was not entitled to them.

■ In the one ground of the amended motion for new trial the defendant complains of the exclusion of certain evidence offered by the defendant. The testimony was offered for the purpose of showing that Sanford Company, Inc., had obtained a release from the only materialman it owed for materials that had gone into the roofing installation. The proof of such release was vital to the issues of the case because, if in fact the release was shown, Sanford Company, Inc., was entitled to the check in question and no recovery could be had against the bank for paying the check proceeds to the rightful owner. The testimony referred to was that of R. S. Stradley, receiver of Sanford Company, Inc., which was as follows: "Q. Tell what arrangements, if any, you made with Mr. Bennett with respect to the account before you signed the affidavit. A. During the course of the pursuit of this job, there were several other jobs Sanford Co. was working on. They were restricted as far as working capital was concerned, tight on cash, and I discussed this account with Pittsburgh with Mr. Bennett on several occasions on the idea that I had several other jobs winding up about the same time. And I had told Mr. Bennett, and he had agreed with me, that it would be all right to let this account ride over until we got the other jobs finished, the proceeds of which I would use to pay the Pittsburgh Plate Glass account. I had that arrangement with the specific understanding he would

be paid interest from the time he allowed that to go beyond maturity. That's the arrangement I had with Mr. Bennett."

Upon objection of counsel the trial court properly held the testimony of Stradley to be hearsay. *Dyer* v. *Cannon*, 24 *Ga. App.* 304 (1) (100 S. E. 723); *Stewart Bros.* v. *Randall Bros.*, 138 *Ga.* 796, 797 (4) (76 S. E. 352); *Barwick* v. *Walden*, 71 *Ga. App.* 824, 825 (32 S. E. 2d 401). While, as contended by counsel, the evidence may have been part of the res gestae of the transaction between Stradley and Pittsburgh Plate Glass Company, the latter was not a party to the case and the testimony objected to was not admissible for that reason. If the witness had testified that the debt to Pittsburgh Plate Glass Company had been released and thus satisfied, it would have been proof of an ultimate fact and admissible, but the conversation between the witness and a person not a party to the case was within the hearsay rule. *Sapp* v. *Callaway*, 210 *Ga.* 277 (79 S. E. 2d 532).

But if the evidence had fallen within an exception to the hearsay rule, it would not have been admissible. It did not show a release of the debt to which it referred but simply an extension of the time in which it was to be paid. The evidence simply showed that Sanford Company, Inc., would pay the debt from the monies it collected for other jobs it was to finish, but did not suggest that if the plate glass company was not paid from the funds collected by Sanford Company, Inc., for the other jobs it was not to be paid at all. To use the vernacular of the witness it was to "ride" until other work being done by Sanford Company was completed. To defer the collection and to release it are two entirely different things.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur. Townsend and Nichols, JJ., concur specially. Felton, C. J., dissents.*

TOWNSEND and NICHOLS, JJ., concurring specially. As to division 4 hereof, it is our opinion that it is unnecessary to determine whether or not this evidence should have been excluded as being inadmissible under the hearsay-evidence rule. It was offered for the purpose of showing a release by Pittsburgh Plate Glass Co. of any interest which that firm had in the funds of the plaintiff, and it was insufficient to establish this fact. Accordingly, if it was error to exclude the evidence it was harmless.

FELTON, C. J., dissenting. I concur in the conclusion that the bank improperly cashed the checks involved in this case upon the indorsement of only one of the payees for the reason that even if one joint adventurer has authority to indorse for another, the payees in this case were not joint adventurers and it is immaterial if the plaintiff thought they were.

I dissent from the judgment affirming the refusal to grant a new trial for the reason that I think the court should have admitted the testimony which was excluded as shown in ground four of the amended motion. The testimony excluded except for a limited purpose only was that of Robert S. Stradley, receiver for Sanford Company, subcontractor. The testimony in substance was that he had known a Mr. Bennett for five or six years; that he had seen him at the Pittsburgh Plate Glass Company office; that he had dealings with him as credit manager of Pittsburgh Plate Glass Company and as such had discussed with Mr. Bennett the bill for the materials bought by Sanford Company and used on the Fulton County parking garage; that Mr. Bennett agreed that it would be all right to let the account ride over until Sanford Company got another job finished, the proceeds of which Stradley would use to pay the Pittsburgh Plate Glass Company account. This testimony was not hearsay. The truth or falsity of what Bennett said to Stradley was not in issue. The issue was whether Bennett released the funds due from the plaintiff to Sanford Company which Sanford Company owed Pittsburgh Plate Glass Company. The issue was what words were used by Bennett, not whether they were true or not. When the words used by Bennett were shown, the law would attach the proper legal consequence. There was at least a question for the jury to decide whether Bennett released the funds. If he did, the plaintiff was released from his obligation to Pittsburgh Plate Glass Company on his bond and there would be no liability on the part of the bank in this case because the plaintiff would have suffered no loss by reason of the payment of the check without the proper indorsement. It is true that Pittsburgh Plate Glass Company would not be bound by the judgment in this case unless an equitable action is brought making it a party, and the possibility of a jury's making a different finding in an action by the Pittsburgh Plate Glass Company on the plaintiff's bond is not a bar to the admissi-

bility of the testimony in this case. The utterance of Bennett here is the issue. VI Wigmore on Evidence 185, § 1770; McCormick on Evidence 463, § 228. Whether the statement was made by Bennett depends on the veracity and credibility of a sworn witness, Stradley, or witnesses, Stradley or Bennett. The question whether Bennett made the statement or not is not dependent on the veracity and credibility of Bennett, as it would be if the truth or falsity of Bennett's statement were in issue. The court erred in excluding Stradley's testimony on the ground that it was hearsay and in admitting it for the sole purpose of explaining why Stradley made an affidavit that all bills for labor and material had been paid so that he could collect the balance due on the contract from the plaintiff. The testimony of Stradley that he was dealing with Bennett as credit manager could have been known by Stradley and, in the absence of objection on the ground that it was a conclusion, it was enough to establish the fact; and prima facie, a credit manager has authority to settle and adjust claims (2 C. J. S. 1339, 1340, § 118 a (1a), note 69) and make the arrangement by way of waiver as is contended for in this case which is in line with the settlement and adjustment of claims.