11248.   BROWN & PEEPLES *v.* STOKES *et al.*

Ordinarily an agent to sell earns his commission only when he finds a customer ready, able, and willing to buy on the terms stipulated by the principal (Civil Code of 1910, § 3587; *Harvil* v. *Wilson,* 11 *Ga. App.* 156, 74 S. E. 845; but the principal can not, with knowledge of the negotiations between the purchaser and the agent, and while such negotiations are still pending, defeat the right of the agent to recover such commission, by interfering with and himself completing the sale of which the agent was the procuring cause. *Case Threshing Machine Co.* v. *Binns,* 23 *Ga. App.* 46 (3) (97 S. E. 443), and cit. The law as here stated applies as well where the broker's compensation is to be

all above a fixed net selling price as where his remuneration is to be a certain percentage of a designated selling price.

DECIDED APRIL 15, 1920.  REHEARING DENIED JUNE 16, 1920.

Complaint; from Tift superior court — Judge Eve.  January 8, 1920.

*Fulwood & Hargrett,* for plaintiffs.   *R. D. Smith,* for defendants.

LUKE, J.   The petition in the instant case unequivocally alleges: that the defendants employed the plaintiffs as real-estate dealers to sell for them a designated farm for $8,000 net to them, and agreed that the plaintiffs should receive for their services whatever sum in excess of $8,000 they could obtain for the place; that the petitioners, acting under their contract of employment, secured a designated purchaser, who was able, ready, and willing to buy said farm for $8,400, and who actually agreed with the petitioners to purchase at that price; and that the defendants privately, and without the knowledge of plaintiffs, approached their said purchaser, and sold said farm to him for $8,000; to the injury and damage of plaintiffs in the sum of $400.   After the introduction of the evidence by plaintiffs and defendants the court directed a verdict for the defendants.   The question then really resolves itself into the proposition whether, under the evidence, the plaintiffs could in any event have legally recovered.

Undoubtedly the evidence shows the contract as alleged.   It clearly appears that the plaintiffs introduced their prospective purchaser, R. D. Smith, to the defendants, showed him over the place, and earnestly worked to induce him to purchase.   The evidence shows also that Smith at one time actually offered to pay $8,200 for the place, but that the plaintiffs declined that offer.   The testimony of one of the plaintiffs is that he did on a certain afternoon succeed in having the said Smith agree to purchase the place for $8,300, and agree to close the deal with the defendants on the following morning.   It appears without contradiction that on the same afternoon Smith went directly to the defendants and closed a deal with them for $8,000.   There is evidence that the next morning J. E. Peeples, one of the plaintiffs, told the younger Mr. Stokes, one of the defendants, that he had sold the place, and that Stokes replied, "I sold the place last night."   Upon inquiry as to who the purchaser was, Stokes told Peeples that he did not want to disclose the purchaser's name, but that he was not any person with

whom the plaintiffs had been negotiating. Shortly after this conversation Peeples saw Smith, the purchaser, and told him the place had been sold, and Smith merely expressed surprise. Some months later, when Peeples learned that Smith was the purchaser, he asked Smith about it, and Smith admitted that he had bought the place on the afternoon of his conversation in regard to a sale for $8,300. Peeples then asked Smith to bring a suit for them against the defendants, and Smith declined, and suggested that they get other lawyers to bring the suit, and also suggested that the conversation between them in regard to the sale for $8,300 be put in writing, so there could be no misunderstanding between them. This was done, and the writing, which was approved by both of them, set out in substance that Smith asked Peeples if he could buy the place for $8,300, and that Peeples said "Yes;" that Peeples requested Smith to give a check for $100 to close the deal, and Smith replied, "No, I will see you in the morning about it."

We do not think the fact that a broker's remuneration is to be all above a fixed net price, instead of a percentage of a gross selling price, would necessarily defeat a recovery of compensation in a case where the owner of the property himself intervenes and sells directly to the purchaser. Though it may be more difficult to ascertain the broker's compensation in a case like the one at bar, yet we think his right to recover for his services is controlled by the same well-established principles of law as obtain in a case where the broker's commissions are fixed on a percentage basis. Under the law as set out in the headnote, we are of the opinion that the jury should have been allowed to determine the issues of fact presented by the evidence. The court erred in directing a verdict for the defendants.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*