CLEMENT A. EVANS & COMPANY INC. *v.* WAGGONER *et al.*

858

No. 14881.   JULY 7, 1944.

*Moise, Post & Gardner,* for plaintiff in error.

*Bond Almand* and *George & John L. Westmoreland,* contra.

JENKINS, Presiding Justice.   Exception is taken to the overruling of a demurrer to a petition, setting up an alleged cause of action wherein the plaintiff seeks an accounting in equity under an alleged agreement creating a joint enterprise for the purchase and resale of certain described securities.   The defendant contends that there was no valid contract, and that consequently no cause of action was shown.   It is contended that under the allegations of the petition, the "joint account" really amounted to nothing more than preliminary negotiations looking to the making of a contract, and that, since no action could be taken by either party unless and until mutually agreed upon, and since either party could withdraw from the agreement before the purchase of any of such securities, the agreement lacks mutuality and neither of the parties is bound to anything or to do anything.   Consequently, it is urged that the alleged agreement could not support the action brought, and that the demurrer thereto should have been sustained.   The gravamen of this contention appears to be, that while it is true enough that the promise of one party constitutes a good consideration for the promise of the other party, yet in order for this to be true the mutual promises must be binding upon each promisor, otherwise there is a mere nudum pactum.   *Morrow* v. *Southern Express Co.,* 101 *Ga.* 810 (28 S. E. 998), is cited, in which the court said: "A promise . . is not a good consideration for a promise unless there is an absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive agreement."   This court, in *Buick Motor Co.* v. *Thompson,* 138 *Ga.* 282 (75 S. E. 354), used this language: "If mutual promises are relied on as a consideration to support a contract, the obligations of the contract must be mutually binding upon the respective parties."   See also *McCaw Manufacturing Co.* v. *Felder,* 115 *Ga.*

408, 412 (41 S. E. 664). In the light of these indisputable rules, let us examine the agreement forming the basis of the action. It will be observed that in the alleged joint account whereby an agreement was made for participation in a joint enterprise, to wit, the purchase and resale of certain specifically mentioned preferred stock of a designated corporation, it was agreed that *"prior to the purchase of the securities* covered by the agreement any member may in good faith withdraw from the account," and also, "that any action taken by the joint account shall be mutually agreed upon." It appears from the allegations of the petition, which on demurrer must be taken to be true as alleged, that subsequently to the revival on August 8, 1941, of a previous, expired agreement, the plaintiff not only repeatedly sought to interest the corporation whose preferred stock the plaintiff and the defendant were seeking to secure for the purpose of refinancing in furtherance of the joint enterprise, but also and repeatedly down to the month of October, 1943, conferred with the defendant with respect thereto; and that it was only after the defendant had already secured the stocks that it sought in October, 1943, to repudiate the joint account constituting the basis of the joint enterprise. We do not think that, because the agreement allowed either of the parties in good faith to withdraw from the joint account before any of the benefits of the enterprise had been achieved, and thus before any equities had arisen in favor of the other member, this would render the agreement nugatory. In the absence of a limitation upon the duration of the agreement, such would seem to be the right of either party, even in the absence of any such specific authority. We do think, however, that, after one of the paramount objects of the joint enterprise had been accomplished by one of the parties to the agreement, to wit, the acquisition of the stock, he should not be permitted, either in good conscience or under the express terms of the agreement itself, to thereafter terminate the joint account; and especially would this seem true where it appears by the petition that the defendant had knowingly allowed the other party to the agreement to expend its time and efforts in furtherance of the agreement up until the time of its attempted dissolution; and where it was sought to cancel the contract only after the stock had been actually acquired. Nor do we think that the contract lacked effectiveness as being without consideration, on the theory that the mutual pro:

ises relied on were not obligatory, but were conditioned on mutual consent, and that therefore the agreement was unenforceable, as being a nudum pactum. We cannot agree that the effect of the agreement amounted to nothing more than a preliminary undertaking whereby the parties proposed and agreed to enter thereafter upon a contract in accordance with subsequent understandings which were required to be mutually agreed upon. We are dealing with a fiduciary relationship; and as was said by Judge Cardozo in Meinhard v. Salmon, 249 N. Y. 458 (164 N. E. 545, 62 A. L. R. 1), while sitting upon the appellate bench of the State of New York: "Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty." According to this conception, it becomes the duty of each member associated in the joint enterprise to put forth his best endeavors to bring about the consummation of the two purposes sought by the agreement of co-operation; and this is true even though the contract provides that neither could bind the other without its consent, either in the acquisition or sale of the securities sought to be refinanced. That each member of the joint enterprise in order to be bound by the actions of the other with respect to the terms of the purchase or of a resale would have to be consulted and would have to agree, does not seem to mean or imply, as contended by able counsel, that neither was "bound to do anything." We can see no valid reason why persons associated in such a hazardous venture as is here involved could not legally and with the utmost propriety stipulate that, when it came to the vital question as to how much money should be parted with in the purchase of the stock, or what profit should be deemed satisfactory in the resale thereof, either would be privileged to pass upon and approve for himself the proposal of his colleague. Indeed, an agreement of the particular type and character now under consideration, which did not contain such a saving provision, would seem to subject all of the contracting parties to a hazard that few if any would venture to assume. That the purchase of stock by the defendant was not approved by the plaintiff in advance, is not a matter of which the defendant can or does complain, since the plaintiff was not consulted. It must be borne in mind that this is not a contract for the purchase and sale of ordinary commodities or services, such as was the case in many of the cases relied upon by the defendant; but it is one which sets

up a fiduciary relationship similar in many respects to an ordinary contract of copartnership. If owing to the peculiar hazard of the enterprise the contracting parties thought it wise and expedient to depart from the general rule governing partnerships, which by the Code, § 75-302, provides that "All the partners shall be bound by the acts of any one, within the legitimate scope of the business of the partnership," we can see no legal reason why they were not privileged to do so. This provision of the contract, as we see, did not convert the agreement into a mere preliminary undertaking for a future binding agreement. The contract engaged the use and employment of the energy and efforts of each party to the agreement in obtaining an offer of sale of the stock on terms such as would be mutually agreeable. The value of the stock being in its nature fluctuating, it seems difficult to conceive how else such a joint enterprise could be entered upon. The same reasoning applies to the future resales. That neither member of the joint enterprise owned or had already existing options on the stock at the time the joint account was established, makes no difference. See *Floyd* v. *Kicklighter,* 139 *Ga.* 133 (5) (76 S. E. 1011); *Jones* v. *Fuller,* 27 *Ga. App.* 84, 86 (5) (107 S. E. 544). As we view the case, the agreement set forth in the petition was a valid contract, and if the defendant desired to withdraw from the joint-account agreement alleged in the petition, he should have exercised such right in accordance with the terms of the agreement, and when he could have done so "in good faith," "prior to the purchase of the securities covered by the agreement," and before equities in favor of his associate had arisen.

We think that the judgment of the trial judge was correct in overruling the demurrer to the petition.

*Judgment affirmed. All the Justices concur.*