33585. BOWMAN *v.* FULLER.

Decided June 12, 1951. Rehearing denied July 18, 1951.

*Moise, Post & Gardner,* for plaintiff in error.

*John L. Westmoreland, John L. Westmoreland, Jr.,* contra.

TOWNSEND, J. (After stating the foregoing facts.) ■ "Broadly, there is a joint enterprise or adventure when two or more combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual· control, provided the arrangement does not establish a partnership." *Atlanta Metallic Casket Co.* v. *Southeastern Wholesale Furniture Co.,* 82 *Ga. App.* 353, 358 (61 S. E. 2d, 196). It is generally held that the acts of one party during the pendency and within the scope of the joint undertaking or enterprise are binding upon the other

joint adventurer. See Goodsitt *v.* Richter, 216 Wis. 351 (257 N. W. 23, 95 A.L.R. 1238); Hartman *v.* Day, 249 App. Div. 786 (292 N. Y. Supp. 226); Federal Underwriters Exchange *v.* Coker (Tex. Civ. App.) 116 S. W. 2d, 922; State ex rel. Crane Co. *v.* Stokke, 65 S. D. 547 (272 N. W. 811, 110 A.L.R. 761). The question of whether or not the facts proved show a joint adventure between the parties as well as whether or not the act done is within the scope of the enterprise so as to bind the other party thereto is generally a jury question. Murray *v.* Williams, 114 Fed. 2d, 282; Adams *v.* Harrison, 34 Cal. App. 288 (93 Pac. 2d, 237); Miller *v.* Boma Investment Co., 112 Colo. 7 (144 Pac. 2d, 988); Bennett *v.* Sinclair Ry. Co., 144 Ohio 139 (57 N. E. 2d, 776); Cockburn *v.* Irvin (Tex. Civ. App.) 88 S. W. 2d, 747. Where a joint adventure is established, the general laws of partnership and agency apply. Commercial Lumber Co. *v.* Nelson, 181 Okla. 122 (72 Pac. 2d, 829); Soulek *v.* City of Omaha, 140 Neb. 151 (299 N. W. 368). As stated in 48 C. J. S., Joint Adventures, § 14: "Members of a joint adventure in general are liable on contracts with third persons which have been duly entered into on behalf and for the purpose of the joint adventure."

Under the evidence here, the court was authorized to find that the defendant had entered into a joint enterprise with Morris Trucking Company under an agreement to share leases and franchise rights and to pool profits, that the defendant resided in Alabama, but had turned over forms to Morris in Atlanta to be used by him in expediting Georgia shipments; that 49 similar leases made by Morris had been ratified by the defendant; that Morris or his employees regularly signed the name "R. L. Moore" to these leases and the defendant regularly received copies thereof and never protested, and that the defendant's agent Hefner admitted Morris had had authority to sign his leases until a date subsequent to that of the accident in question. The court was fully authorized to find that the agent of S. J. Morris Company, in arranging with the plaintiff to lease his truck to Bowman Transportation Company, was acting in pursuance of and within the scope of the joint enterprise agreement, and that the profits expected from the lease, which was for the purpose of transporting government goods

consigned to Bowman Transportation Company and S. J. Morris Motor Express Inc. jointly for delivery were to have been divided between these parties. This being so, the court was authorized to find that the defendant was bound by the act of his co-adventurer in placing his signature, by that of his Rome agent, on the lease contract.

■ It is strongly urged by the defendant in the special ground of the amended motion for a new trial that even if the question of agency should be determined adversely to him the contract itself is void and unenforceable, for the reason that the lease agreement as actually intended to be enforced represents an attempt on the part of the plaintiff to engage as a common carrier in interstate commerce without having first obtained a certificate of public convenience and necessity issued by the Interstate Commerce Commission (49 USCA § 306 (a)); that it is therefore a mere subterfuge which "directly tends in a marked degree to bring about results that the law seeks to prevent [and] cannot be made the ground of a successful suit" (*Orkin Exterminating Co. of South Ga.* v. *Dewberry,* 204 *Ga.* 794 (51 S. E. 2d, 669), and that for this reason it is void as against public policy (Code, § 20-501); *Robinson* v. *Reynolds,* 194 *Ga.* 324 (1) (21 S .E. 2d, 214); *Brown* v. *Glass,* 46 *Ga. App.* 323 (2) (167 S. E. 722); *Bugg* v. *Towner,* 41 *Ga.* 316. We agree with the defendant that if the purpose of the lease were to circumvent the law regulating interstate commerce no rights would accrue to either party thereunder, the purpose of the transaction being unlawful. It does not appear, however, that such was the case. The plaintiff was dealing with S. J. Morris Express Inc. and Bowman Transportation Company, both holders of I. C. C. permits. He regularly leased his trucks to common carriers for trips to Florida in order that he could have them available in that State to haul his own produce back for his own purposes. So far as the record shows, he never leased them, nor did he do so in this case, to shippers who were not the possessors of I. C. C. permits. The cases cited by the defendant in this connection (U. S. *v.* La Tuff Transfer Service, Inc., 95 Fed. Supp. 375; I. C. C. *v.* F. & F. Truck Leasing Co. et al., 78 Fed. Supp. 13; 123 Fed. 2d 210) deal with situations where injunctions or criminal proceedings were instituted against

defendants who, under the guise of leases similar to the one here, attempted to carry on interstate commerce transactions, and who, like the defendant here, paid all expenses and repairs of transportation and used as drivers persons regularly employed by them, in one-way leases. The distinction lies in the fact that in those cases the lessee was not a common carrier in his own right, but was an owner-shipper interested in obtaining transportation for his own goods. Thus, the entire transaction was for the mere purpose of obtaining transportation through facilities not licensed to supply such service. In U. S. v. Steffke, 36 Fed. Supp. 257, it is true that the lessee was a licensed motor carrier, but the purpose of the purported lease agreements was not as a bona fide transaction placing the leased equipment at the service of the lessee, but was designed as a cover-up under which the lessor could preserve its own business, and it continued to solicit and accept cargoes of third persons, make rates and handle transportation problems. In these cases evidence that the driver was an employee of the lessor and that the lessor paid the actual expenses of the leased equipment were considered as a circumstance tending to prove, in relation to other evidence regarding the lessor's activities, that he was in fact engaging as a motor carrier for hire. Such is not the case here. Morris, not the plaintiff, procured the consignment of government goods, and Morris, not the plaintiff, was to receive payment for their delivery. In so doing he was acting not for the plaintiff but for himself and the defendant Bowman Transportation Company in their perfectly legal joint leasing operation as licensed motor carriers. If the cargo actually transported was a commodity not covered by their I. C. C. permits, and if the shipment actually originated at a point other than Rome, Georgia, as required by the permit, this was not the plaintiff's concern, he having no interest in the transportation of the lessee's cargo. In consequence, it cannot be said that the plaintiff entered into the lease for any unlawful purpose. See also I. C. C. v. Isner, 92 Fed. Supp. 582, 588, wherein the court held as follows: "Of course, where the lease of a motor vehicle equipment is made in good faith and performance of the conditions of the lease is honestly and scrupulously carried out, such lessor and lessee relationship might be found regular and

proper and not subject to regulations under the statute." See also Motor Haulage Co. *v.* U. S., 70 Fed. Supp. 17, wherein it is pointed out that in appeals from rulings of the commission involving this particular statute the question is whether or not the commission was right in arriving at its decision, and that to decide this question the Federal courts need not analyze the legal obligations of the parties to the lease in determining whether it comes within the purview of the statute. It thus appears that the decisions of the Federal court cases cited were not based on the contractual relationships and legal obligations of the parties in a common law action of the type now before us.

■ Since the defendant is bound by the contract, he is bound by the provision thereof to the effect that the driver is to be deemed to be in his employ for the duration of the lease. Whether or not the defendant ever assumed any control or supervision of the driver of the vehicle on the trip south, he acquired the right to do so and accepted the status of an employer. Because of this, any negligence of the driver in allowing the vehicle to burn would not change the situation, as such negligence under the circumstances would be chargeable to the defendant rather than to the plaintiff. The provisions of Code § 12-203 to the effect that if the bailor sends his own agent with the thing bailed, then the hirer shall be responsible only for the consequences of his own directions, do not apply in a situation where the hirer expressly accepts the employee of the owner as his own employee for the duration of the bailment.

The trial court did not err in overruling the motion for a new trial as amended.

*Judgment affirmed. MacIntyre, P.J., and Gardner, J., concur.*