23841. MURPHEY, TAYLOR & ELLIS, INC. v. WILLIAMS et al.

23842, 23857. WILLIAMS v. MURPHEY, TAYLOR & ELLIS, INC. (two cases).

ARGUED DECEMBER 13, 1966—DECIDED FEBRUARY 10, 1967— REHEARING DENIED FEBRUARY 23, 1967.

*Erwin Sibley, Milton Gardner, Sell & Comer, John D. Comer,* for Murphey, Taylor & Ellis, Inc.

*Martin, Snow, Grant & Napier, Cubbedge Snow, Joseph B. Duke,* for Williams et al.

COOK, Justice. Murphey, Taylor & Ellis, Inc., a real estate broker, brought a petition in Baldwin Superior Court against Walter B. Williams, Jr., a resident of the county, and Walter B. Williams, Sr., a resident of Jones County. The petition, as amended, was in three counts. The allegations of Count 1 are included in all three counts, and are summarized as follows:

Walter B. Williams, Jr., the owner of a shopping center, had made a tentative agreement with Piggly Wiggly Southern, Inc. (hereinafter referred to as Piggly Wiggly) to enter into a lease to occupy a building proposed to be constructed on a site where a building had burned, and on June 5, 1961, Walter B. Williams, Jr., orally engaged the petitioner to serve as rental agent for the negotiation of a lease between the owner and Piggly Wiggly, and for the subsequent management of the property. Walter B. Williams, Jr., knew that the normal compensation to be paid by the owner to the petitioner was 5% of the gross rentals, since the petitioner had previously served as rental agent for him. The petitioner immediately entered into active and continuing negotiations with Piggly Wiggly, which successfully culminated in a written lease contract between Town & Country Shopping Center, Inc., as lessor, and Piggly Wiggly, as lessee, dated October 7, 1961. A clause was inserted in this lease providing that the petitioner was vested with an interest for its commissions during the term of the lease and any renewals thereof. This lease did not become effective, since Walter B. Williams, Jr., did not place the shopping center in a corporation by the name shown as the lessor in the contract, as he had intended, and the building could not be completed within the time specified in the lease. On February 15, 1962, Walter B. Williams, Jr., by warranty deed, conveyed the property covered by the lease to his father, Walter B. Williams, Sr. The petitioner continued to negotiate with Piggly Wiggly and was the procuring cause of a second lease dated May 11, 1962. This second lease was between Walter B. Williams, Sr., and Walter B. Williams, Jr., as lessors, and Piggly Wiggly, as lessee. It obligated the lessee to pay the same rental as that in the first lease, and leased the same property intended to be included in the first lease. Pursuant to the instructions of Walter B. Williams, Jr., to the attorney for Piggly Wiggly preparing this lease, it contained no agency clause to reflect the petitioner's interest in the rentals to be paid thereunder, and the lease was executed without the knowledge of the petitioner. While there was no contract between the petitioner and Walter Williams, Sr., he is bound by the contract of listing and is obligated to pay

the commissions because of his knowledge of the continuing efforts of the petitioner in his behalf, and because he has accepted the products of the petitioner's efforts as rental agent. Specified services were rendered by the petitioner in negotiating with Piggly Wiggly.

The prayers of the petition were: for an accounting to the petitioner showing all rentals received under the lease; for a judgment against the defendants for 5% of all gross rentals paid by Piggly Wiggly; that the court declare a special lien in favor of the petitioner for the sums to be due and payable to the petitioner in the future on all rental payments to be made under the contract; and for other and further relief.

The second count alleged further that after the conveyance of the property from Walter B. Williams, Jr., to Walter B. Williams, Sr., the latter designated the former as his agent to do all things necessary to negotiate and consummate the proposed lease with Piggly Wiggly. Walter B. Williams, Jr., as agent for his father, continued the employment of the petitioner to continue negotiations with Piggly Wiggly, and Walter B. Williams, Sr., is bound by the terms of the employment of the petitioner by Walter B. Williams, Jr.

In the third count it was alleged that Piggly Wiggly was unwilling to enter into a lease with Walter B. Williams, Sr., without sufficient rights in the parking area of the shopping center owned by Walter B. Williams, Jr. Walter B. Williams, Jr., and Walter B. Williams, Sr., formed a joint enterprise under the terms of which they joined, as lessors, in a single lease to Piggly Wiggly, leasing the building and rights in the parking area. Walter B. Williams, Jr., as a joint venturer and as a joint lessor, continued the employment of the petitioner as rental agent for the joint venturers and both are liable for commissions earned by the petitioner pursuant to the listing contract.

Numerous demurrers were filed by the defendants. A number of these were sustained, which had the effect of dismissing the first and second counts of the petition. The case was tried on the third count, and at the conclusion of the evidence, motions for a directed verdict were made by both parties. The trial judge denied the motion of the petitioner, and directed a verdict for the defendants.

102

In the main appeal the petitioner enumerated as error the sustaining of the demurrers to the first and second counts of its petition, the direction of the verdict for the defendants, and the denial of its motion for a directed verdict. The defendants filed separate cross appeals, and enumerated as error the overruling of certain grounds of their demurrers.

■ The first and second counts of the petition alleged facts purporting to show that Walter B. Williams, Sr., was obligated to pay commissions to the petitioner for its activities in negotiating the second lease with Piggly Wiggly. Since Walter B. Williams, Sr., is not a resident of the county in which the action was brought, demurrers were properly sustained to these counts, no substantial relief having been sought against the only defendant who is a resident of the county. *Grace v. Interstate Bond Co.*, 193 Ga. 810 (20 SE2d 131).

■ The third count alleged a cause of action against both defendants as joint venturers, or joint adventurers. This count alleged that each defendant had property rights which were leased to the lessee, and that they were joint venturers in the enterprise of leasing the property to Piggly Wiggly.

"Differing from an ordinary partnership or limited partnership, is a cooperative enterprise pertaining to a single definite transaction. This is usually termed a 'joint adventure' or 'joint enterprise.'" *Clement A. Evans & Co. v. Waggoner*, 197 Ga. 857 (1c) (30 SE2d 915). "Broadly, there is a joint enterprise or adventure when two or more combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control, provided the arrangement does not establish a partnership." *Atlanta Metallic Casket Co. v. Southeastern Wholesale Furniture Co.*, 82 Ga. App. 353, 358 (61 SE2d 196); *Holland v. Boyett*, 212 Ga. 458 (1) (93 SE2d 662); *Security Development &c. Co. v. Williamson*, 112 Ga. App. 524, 525 (145 SE2d 581).

In 48 CJS 866, Joint Adventures, § 14 it is said: "Members of a joint adventure are liable on a contract entered into by a member pursuant to authority conferred on him by his associates. Substantially the same rules with respect to principal and agent applicable to members of a partnership apply to members of a joint adventure with respect to contracts with

third persons within the scope of the joint enterprise, and a joint adventurer may bind his associates by a contract which is in furtherance, or within the scope, of the joint enterprise." This principle was recognized in *Puckett v. Reese*, 203 Ga. 716, 725 (48 SE2d 297).

Under the allegations of the petition, Walter B. Williams, Jr., entered into a binding contract with the petitioner to negotiate the terms of a lease with Piggly Wiggly, and the petitioner was the procuring cause of the lease finally consummated. Unquestionably, if Walter B. Williams, Jr., had not conveyed the property to his father, he would have been bound to pay the petitioner the commissions under their contract, even though the lease was finally made by the owner without the knowledge of the petitioner. *Doonan v. Ives & Krouse*, 73 Ga. 295, 302; *Gresham v. Connally*, 114 Ga. 906 (41 SE 42) ; *Graves v. Hunnicutt*, 8 Ga. App. 99 (3) (68 SE 558) ; *Edwards v. Andrews Bros.*, 24 Ga. App. 645 (101 SE 775) ; *Brown & Peebles v. Stokes*, 25 Ga. App. 254 (103 SE 423) ; *Washington v. Jordan*, 28 Ga. App. 18 (109 SE 923) ; *Wilcox v. Wilcox*, 31 Ga. App. 486 (2) (119 SE 445) ; *City Nat. Bank &c. Co. of Miami v. Orr*, 39 Ga. App. 217 (146 SE 795) ; *Wilharbla Realty Co. v. Carrington*, 60 Ga. App. 353 (3 SE2d 785).

Since the petition alleged that the lessors in the contract were joint venturers, the contract of Walter B. Williams, Jr., would be binding on Walter B. Williams, Sr., and they would be jointly liable for the commissions earned by the petitioner. The third count, therefore, stated a cause of action against both defendants. The petition as a whole was not subject to the grounds of demurrer that it failed to state a cause of action, or that there was a misjoinder of defendants and causes of action. The third count of the petition was not subject to the attack that it set out a new cause of action.

■ The trial judge overruled the ground of special demurrer to the third count that no proper measure of damages is alleged. Counsel for the petitioner concede that they have found no case in Georgia holding that a broker may have a special lien on the rentals accruing under a lease which the broker has negotiated, to enforce the payment of the commissions which he

has earned. It seems to be the general rule in other jurisdictions that brokers do not have any general lien for commissions earned, but may have a special lien under particular facts authorizing the enforcement of an equitable lien. 12 CJS 235, Brokers, § 99; 12 AmJur2d 983, Brokers, § 241; Erswell v. Ford, 208 Ala. 101 (94 S 67).

In *Lovell v. Frankum,* 145 Ga. 106 (88 SE 569), it was held: "In an action for damages for breach of contract to give a note, with deed to secure it for money loaned, in the absence of any special facts authorizing equitable relief, the plaintiff is not entitled to a special lien on the land for damages which he may recover." In *Chapple v. Hight,* 161 Ga. 629, 632 (131 SE 505), it was said: "We agree with the learned counsel for the plaintiff in error that as a general rule courts can not create liens; and yet a special lien on specific property may be decreed whenever under the rules of equity the circumstances require this remedy." In *Shubert v. Speir,* 201 Ga. 20 (38 SE2d 835), the equitable lien which the court held to be authorized by the pleadings in the case was in place of the statutory one to which the petitioner would have been entitled if the defendant had not breached his contract. For discussions on the nature of special or equitable liens, see *Collier v. Bank of Tupelo,* 190 Ga. 598, 601 (10 SE2d 62); *Routon v. Woodbury Banking Co.,* 209 Ga. 706 (75 SE2d 561).

No special facts are pleaded in the present case to show that the petitioner is entitled to a special or equitable lien on the rentals accruing under the lease contract. Under the allegations the petitioner is entitled to damages for the commissions it would have earned. *Hendrix v. Crosby,* 76 Ga. App. 191 (45 SE2d 448).

Except as pointed out herein, we find no error in the rulings on demurrer.

■ "The question of whether or not the facts proved show a joint adventure between the parties as well as whether or not the act done is within the scope of the enterprise so as to bind the other party thereto is generally a jury question." *Bowman v. Fuller,* 84 Ga. App. 421, 426 (66 SE2d 249). We will not attempt to set out the voluminous evidence introduced on the trial of the issues made by Count 3 of the petition.

The lease contract showed that it was executed by both defendants as lessors, and the duties and obligations of each were defined. While the proceeds of the lease contract were to be paid to Walter B. Williams, Sr., there was evidence that the lease would be profitable to Walter B. Williams, Jr., since the lessee will operate a large retail grocery store in the building leased, and this operation will enhance the value of the remainder of the shopping center. There was testimony concerning the activities of the petitioner in procuring the lease.

From the evidence the jury might have found a verdict for the petitioner, although such a verdict was not demanded. It was not error to deny the motion for directed verdict of the petitioner, but was error to direct a verdict for the defendants.

*Judgment affirmed in part and reversed in part on the main and cross appeals. All the Justices concur, except Duckworth, C. J., and Almand, P. J., who dissent from Divisions 2 and 4.*

ALMAND, Presiding Justice, dissenting. The essentials of a joint adventure are: (a) a joint proprietary interest, (b) a right of mutual control over the subject matter of the venture, and (c) a mutual sharing of the profits arising from the joint enterprise. 30 AmJur 945, Joint Adventures, § 10. The evidence is insufficient to show mutual control over and sharing of profits from the leased property.

To the ruling of the majority that the evidence sufficiently shows a joint adventure and that the father was bound by the acts of his son as the father's agent creating jury issues, I dissent.