A07A0701. LANE SUPPLY, INC. v. W. H. FERGUSON & SONS, INC. et al.
(649 SE2d 614)

BERNES, Judge.

Lane Supply, Inc. sued W. H. Ferguson & Sons, Inc. and Premier Petroleum, Inc. asserting claims arising out of Lane's work in supplying materials and labor in a project to "rebrand" 25 gasoline retail

outlets. The trial court granted summary judgment in favor of Ferguson and Premier. On appeal, Lane argues that the trial court erred in granting summary judgment to Ferguson and Premier on its quantum meruit and promissory estoppel claims. We disagree and affirm.

> Summary judgment is proper where the movant shows no genuine issue of material fact exists and entitlement to summary judgment as a matter of law. A defendant carries this burden by demonstrating the absence of evidence as to one essential element of plaintiff's case. Should the defendant do so, the plaintiff cannot rest on [its] pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Jackson v. K-Mart Corp.*, 242 Ga. App. 274, 275 (529 SE2d 404) (2000). See OCGA § 9-11-56 (c). Our review of the grant of summary judgment is de novo, and "we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation omitted.) *Ledford v. Smith*, 274 Ga. App. 714, 715 (618 SE2d 627) (2005).

So viewed, the evidence shows that appellee Ferguson is a wholesale fuel supplier. In that capacity, Ferguson buys gasoline from Motiva Enterprises, LLC, which owns the Shell brand, and sells the fuel to independent service stations.

In November 2002, Ferguson entered into a "Fast Fusion Enrollment Agreement" with Motiva to convert 25 retail service stations to the Shell brand. Ferguson owned one of the stations to be converted, whereas the other stations were owned by independent third parties.

Ferguson contracted with SEF Construction Company, Inc. to perform construction work associated with the rebranding of the service stations. SEF then subcontracted with appellant Lane to supply materials and labor for the rebranding. Notably, Ferguson, SEF, and Lane never contracted with the service station owners themselves in connection with the rebranding of the stations, although the station owners were aware that the rebranding work was being performed.

During the course of the rebranding, Ferguson sold the gasoline supply rights to some of the stations that were being rebranded to appellee Premier, another wholesale fuel supplier. Premier took over responsibility for rebranding these stations, and Motiva paid Premier for the rebranding.

Apart from a de minimus amount, SEF did not pay Lane for its rebranding work. In August and September 2003, Lane filed materialman's liens against the 25 stations involved in the rebranding,

although Lane had not installed any materials on some of the stations. Station owners began demanding that Ferguson and Premier have the liens removed.

On December 1, 2003, Premier's president, Aziz Dhanani, telephoned Lane's CFO, Steve Golovich. Dhanani told Golovich that he was with Ferguson's vice president, Sherry Ferguson, and they were calling because they "wanted to get this matter settled." Dhanani then explained that Premier and Ferguson had divided up responsibilities, with Premier taking the role with respect to the sites for which Lane claimed that it was owed for uninstalled materials, while Ferguson was to be responsible for finalizing the "installed jobs." Golovich told Dhanani that Lane needed to be paid all of the money it was owed for its work, and that Lane's foreclosure on its lien rights was its most viable tool for being made whole. Dhanani responded to Golovich, "You will be paid a hundred percent on all of the material-only jobs and all the installed jobs." Dhanani estimated that Lane would have full payment by the end of December because "it was very close for funds flowing." Dhanani did not, however, specify who would pay Lane. In light of Dhanani's statements, Golovich told Dhanani that Lane would not foreclose on the liens.

Thereafter, Ferguson's president sent Lane a letter proposing a settlement with regard to the liens. Under the proposed settlement, Ferguson would pay Lane an as-yet undetermined sum of money in return for Lane's release of the liens. Ferguson also proposed that Lane be given a lien against a service station owned by Ferguson to secure the payments.

The parties subsequently began negotiations over the terms of a potential settlement, but Ferguson ultimately discontinued negotiations with Lane. In a letter sent to Lane, Ferguson explained that it was ceasing negotiations because it had come to the conclusion that Lane's liens were invalid. This lawsuit followed.

1. Lane claims that the trial court erred in granting summary judgment to Ferguson and Premier on its quantum meruit claim. We disagree.

> In order to recover under a quantum meruit theory, claimant must show (1) his performance as agent of services valuable to the defendants; (2) either at the request of the defendants or knowingly accepted by the defendants; (3) the defendants' receipt of which without compensating claimant would be unjust; (4) and claimant's expectation of compensation at the time of the rendition of the services.

(Citations and punctuation omitted.) *Artrac Corp. v. Austin Kelley Advertising*, 197 Ga. App. 772, 777 (5) (399 SE2d 529) (1990).

Here, the uncontroverted evidence reflects that Lane had no expectation of payment from Ferguson and Premier at the time it performed work on the rebranding project, and so its quantum meruit claim necessarily fails as a matter of law. See *Scott v. Mamari Corp.*, 242 Ga. App. 455, 458 (2) (530 SE2d 208) (2000); *Artrac Corp.*, 197 Ga. App. at 777 (5). Lane contracted with SEF to provide labor and materials for the rebranding project, not with Ferguson or Premier. Thus, at the time it performed the rebranding work, Lane expected payment from SEF based on the express contract, rather than from some third party. As Golovich's deposition testimony makes clear, Lane began looking to Ferguson and Premier for payment only *after* Lane had performed the work and SEF had failed to fulfill its promise to pay under the express contract. "There can be no recovery for services rendered . . . with no expectation at the time of the rendition that they will be compensated" by the defendant. (Emphasis omitted.) *Smith Dev., Inc. v. Flood*, 198 Ga. App. 817, 820-821 (3) (b) (403 SE2d 249) (1991). Consequently, Lane cannot establish an essential element of its quantum meruit claim, namely, expectation of compensation from Ferguson and Premier at the time services were rendered.

Nonetheless, Lane argues that Ferguson's and Premier's alleged actions in inducing Lane to forbear from enforcing its lien rights creates a genuine issue of fact over whether Lane can recover under the quantum meruit theory of equitable lien. Although somewhat unclear, Lane appears to argue that Ferguson and Premier promised Lane that it would be fully compensated if it refrained from enforcing its liens, which induced Lane not to take certain actions necessary to preserve its lien claims, and that this inducement gave rise to a viable equitable lien theory of recovery.

We disagree. It is true that "[w]hen a party entitled to a statutory lien has been prevented from perfecting such lien by the acts of the adverse party, . . . such party is entitled to an equitable lien for the improvements made on a quantum meruit theory." (Citations and punctuation omitted.) *Clover Cable of Ohio v. Heywood*, 260 Ga. 341, 344 (4) (392 SE2d 855) (1990). See also *Jones v. Ely*, 95 Ga. App. 4, 5 (4) (96 SE2d 536) (1957); *Shubert v. Speir*, 201 Ga. 20, 21 (3) (38 SE2d 835) (1946). The "equitable lien [is] in place of the statutory one to which the petitioner would have been entitled," if the adverse party had not prevented perfection of the lien. *Murphey, Taylor & Ellis v. Williams*, 223 Ga. 99, 104 (3) (153 SE2d 542) (1967). Put another way, in this context, the equitable lien imposed by a court acts as a substitute for the statutory mechanics' lien that the plaintiff would have enforced against the subject property, but for the alleged wrongdoing.

Given the nature of the equitable lien imposed in this circumstance, it follows that such a lien applies in the context of wrongdoing by the *property owner*, against whose property the statutory lien would have been enforced. See *Heywood*, 260 Ga. at 344 (4). But, Lane is not suing the property owners — i.e., the retail service station owners against whom the statutory liens would have been enforced — or alleging that they committed any wrongdoing that induced Lane not to enforce its liens.[1] Thus, Lane's equitable lien theory of recovery necessarily fails as a matter of law.[2]

2. Lane also argues that the trial court erred in granting summary judgment to Ferguson and Premier on its promissory estoppel claim. Again, we disagree.

> To prevail on a promissory estoppel claim, plaintiffs must show that (1) defendant made certain promises, (2) defendant should have expected that plaintiffs would rely on such promises, (3) the plaintiffs did in fact rely on such promises to their detriment, and (4) injustice can be avoided only by enforcement of the promise.

(Citation omitted.) *Canterbury Forest Assn. v. Collins*, 243 Ga. App. 425, 428 (2) (532 SE2d 736) (2000). Even assuming that Ferguson and Premier made a "certain promise" to compensate Lane for its rebranding work, the trial court did not err in granting summary judgment to Ferguson and Premier because there is no genuine issue of material fact over whether Lane detrimentally relied on their alleged promise.

Lane contends that it detrimentally relied upon Ferguson's and Premier's promise by refraining from foreclosing on the materialman's liens; cancelling and releasing seven of the twenty-five materialman's liens; returning certain specially manufactured materials to its own stock that had never been installed; and agreeing to complete its installation of specially fabricated materials at two of the stations. We conclude that none of these actions demonstrated harm to Lane or otherwise caused Lane "to forego a valuable legal right to [its] detriment." (Citation omitted.) *Wright v. Newman*, 266 Ga. 519, 520 (467 SE2d 533) (1996).

---

[1] Ferguson owned one of the stations that was to be rebranded, but according to Lane's own records, its work on Ferguson's station was cancelled and thus could not provide a basis for a lien claim against that station, whether statutory or equitable in nature.

[2] We also note that Lane's equitable lien theory fails as a matter of law because Lane never could have perfected the statutory liens even in the absence of the alleged wrongdoing by Ferguson and Premier, since the liens themselves were invalid, as explained infra in Division 2.

As to the liens which Lane agreed to refrain from foreclosing upon, cancel, or release in return for the alleged promise to compensate, we conclude that they were never valid. The lien statute provides that a materialman's lien may "attach to the real estate of the owner for which the labor, services, or materials are furnished if they are furnished at the instance of the owner, contractor, or some other person acting for the owner or contractor."[3] OCGA § 44-14-361 (b). "Absent proof of a contractual relationship, either directly or through a chain of contracts, between the owner of the property and the person to whom the materials are furnished, a lien created under OCGA § 44-14-361 et seq. will not attach." *Benning Constr. Co. v. Dykes Paving & Constr. Co.*, 263 Ga. 16, 18-19 (426 SE2d 564) (1993).

In the present case, there was no evidence that the work performed by Lane was furnished at the instance of the station owners, or for some other person acting on their behalf.[4] The station owners did not contract directly with Lane, and they were not themselves a party to the chain of contracts governing the rebranding work that ran from Motiva to Lane. While Ferguson had gas supply contracts with the station owners, these contracts do not appear in the record and thus shed no light on this issue. Furthermore, Lane never argued that either Ferguson or Premier was acting as an agent for the owners. Rather, Lane argued below that the evidence demonstrated that Ferguson's vice president and an SEF representative visited with each retail outlet manager and explained the conversion process, and that this was sufficient to raise an issue of fact as to the validity of the liens. But, the owners' knowledge of and consent to the work was not sufficient, standing alone, to establish the validity of the liens. See, e.g., *F. S. Assoc., Ltd. v. McMichael's Constr. Co.*, 197 Ga. App. 705, 706 (1) (399 SE2d 479) (1990); *Nunley Contracting Co. v. Four Taylors, Inc.*, 192 Ga. App. 253, 254 (384 SE2d 216) (1989). Accordingly, the liens were invalid as a matter of law, and it follows that Lane did not forego a valuable legal right by refraining from foreclosing upon, cancelling, or releasing them.

Lane also contends that it acted to its detriment by taking certain specially manufactured goods back into its own stock in reliance upon Ferguson's and Premier's promise to pay. In this respect, Lane argues that it is axiomatic that any retailer of specialized, custom made goods suffers a loss when forced to take the goods back into stock as a result of a breach of contract. Ferguson and Premier, however, did

---

[3] A "contractor" for purposes of the lien statute, is defined as "a contractor having privity of contract with the owner of the real estate." OCGA § 44-14-360 (1). Lane concedes that neither Ferguson nor Premier is a contractor under this statutory definition.

[4] Although Ferguson owned a station to be rebranded, Lane never performed any work associated with that station, as noted supra in footnote 2.

not breach any contract with Lane to purchase the specialized goods, and so it is unclear how this axiom would apply in the present context. And, while Lane makes the blanket assertion that the record does not support the trial court's finding that Lane failed to show that it suffered any detriment in taking back the goods, Lane provides no record citations to support this assertion, and "we will not cull the voluminous record on [its] behalf." *Steele v. Atlanta Maternal-Fetal Medicine*, 283 Ga. App. 274, 275-276 (1) (641 SE2d 257) (2007).

Finally, the uncontroverted evidence shows that Lane did not suffer any detriment when it agreed to complete its installation of specially fabricated materials at two stations. Lane contracted with Premier to perform this work and, according to Golovich's deposition testimony, was paid in full.

For these combined reasons, we conclude that there was no genuine issue of material fact over whether Lane detrimentally relied on Ferguson's and Premier's alleged promise to compensate Lane for its rebranding work. The trial court thus did not err in granting summary judgment to Ferguson and Premier on Lane's promissory estoppel claim. See *Lotus Property Dev. v. Greer*, 278 Ga. App. 773, 776-777 (5) (630 SE2d 112) (2006).

*Judgment affirmed. Blackburn, P. J., and Ruffin, J., concur.*

DECIDED JULY 11, 2007.

*Smith, Currie & Hancock, Eugene J. Heady*, for appellant.
*Anderson, Tate & Carr, Thomas T. Tate, Donald L. Swift III, Mills & Moss, Steven M. Mills, Timothy S. Walls*, for appellees.