**THIRD DIVISION**
**DOYLE, P. J.,**
**REESE, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. https://www.gaappeals.us/rules**

**October 21, 2022**

# In the Court of Appeals of Georgia

A22A1057. CHOI v. SIERRA CONSTRUCTION COMPANY, INC.

REESE, Judge.

In this action for breach of contract, the jury found in favor of Sierra Construction Company, Inc. ("Sierra"). Defendant Israel Choi appeals, contending that the trial court erred in crafting the verdict form and charging the jury. For the reasons set forth infra, we reverse.

Construed in favor of the jury's verdict,[1] the evidence presented at trial shows that in March 2013, Israel and June Choi,[2] who are of no relation, incorporated Blue

---

[1] See *Yash Solutions v. New York Global Consultants Corp.*, 352 Ga. App. 127, 132 (1) (834 SE2d 126) (2019).

[2] Several parties in this case share the last name Choi. Accordingly, we will use first names to avoid confusion.

Basket COA Inc. ("Blue Basket"). June was the sole shareholder. Initially, June's son, Max Choi, was listed as an officer, along with Israel.[3]

In November 2013, the City of Atlanta ("the City") solicited bids to operate a coffee and bakery concession in the rental car center of Hartsfield-Jackson Atlanta International Airport. Because Blue Basket did not meet the City's requirements for minimum annual gross revenue in food service operations, it formed a joint venture with Israel to operate the concession in January 2014. Although the joint venture agreement required Israel to contribute $140,000, he never did so. In an addendum to the joint venture agreement, Blue Basket agreed to bear full responsibility and liability for the pursuit of the concession contract.

The joint venture, IC BBCOA JV ("the JV"), submitted a bid to operate the concession, and Israel provided certain information about his existing businesses as part of the bid. According to both the JV agreement and the bid, Israel was the majority (51 percent) owner of the JV and he would be responsible for the day-to-day management and operation of the concession.

---

[3] By June 2014, Israel was no longer listed as an officer in Blue Basket, and in November 2014, June transferred all of her shares of Blue Basket to Max.

In February 2015, the JV entered into a concession lease agreement with the City. The lease required that the JV "at its own expense construct all improvements and install all trade fixtures" according to the City's specifications. On September 24, 2015, Blue Basket entered into a construction contract with Sierra to build the concession. Neither Israel nor the JV was a party to the contract. Sierra completed construction a few months later. Despite discussions with a lender about obtaining a Small Business Administration-backed loan and approximately $800,000 in deposits into Blue Basket's bank accounts, Blue Basket failed to pay the balance owed on the construction contract. Ultimately, the City shut down the concession for nonpayment of rent.

Sierra filed suit alleging (1) breach of contract against Blue Basket and Israel as members of the JV; (2) piercing the corporate veil/alter ago liability against Israel, Max, and Max's parents, June and Jin Choi; and (3) fraud against Israel and Max.

Blue Basket and Max's parents failed to comply with discovery, and the trial court entered default judgments against Blue Basket[4] a/k/a and d/b/a the JV and June and Jin. The case proceeded to a jury trial against Max and Israel, with the court

_____

[4] Blue Basket later changed its name to RCN, Inc., but after it failed to file its annual corporate registration, it was administratively dissolved by the Secretary of State.

instructing the jury that the claims against Blue Basket and Max's parents had already been addressed and the jury need not concern itself with those claims. Much of the evidence at trial focused on Max's and his parents' use of Blue Basket corporate funds to pay personal expenses. Israel was never paid any money from the concession. However, the JV was listed as the tenant on the blueprints Blue Basket provided, and Israel's personal financial information was submitted as part of the Small Business Administration-backed loan application.

On the breach-of-contract claim against Blue Basket and Israel, as members of the JV, the jury returned a verdict for Sierra in the amount of $644,876.86. On Sierra's claim against Max to pierce the corporate veil, the jury awarded Sierra $315,989.66. The trial court granted Israel's motion for directed verdict as to the claim against him to pierce the corporate veil, and the jury returned verdicts in favor of Israel and Max on Sierra's fraud claims. This appeal follows.[5]

"The form of a verdict and the submission of a special verdict are within the discretion of the trial court, and, absent an abuse of that discretion, the court's choice

---

[5] Max also appealed to this Court, but we remanded the case to the trial court after he indicated that he had filed for Chapter 13 bankruptcy protection. See Case No. A22A0891 (Sept. 13, 2022).

4

will not be overturned."[6] As a general rule, "in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection."[7] However, we "shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law[.]"[8] With these guiding principles in mind, we turn now to Israel's specific claims of error.

1. Israel contends that the trial court erred in submitting to the jury a confusing verdict form.

The verdict form "must be adequately crafted to elicit a decision on the issues before the court."[9]

Israel argues that the verdict form did not allow the jury to consider his defense that Blue Basket did not enter into the construction contract on behalf of the JV, but

---

[6] *R. C. Acres, Inc. v. Cambridge Faire Properties, LLC*, 331 Ga. App. 762, 764 (1) (771 SE2d 444) (2015) (citation and punctuation omitted); see OCGA § 9-11-49.

[7] OCGA § 5-5-24 (a).

[8] OCGA § 5-5-24 (c).

[9] *R. C. Acres*, 331 Ga. App. at 764 (1) (citation and punctuation omitted).

rather for its own benefit, and the verdict form improperly grouped Israel with Blue Basket, who was indisputably a party to the contract. As relevant here, the verdict form read as follows:

> As to Plaintiff Sierra Construction Co., Inc.'s breach of contract claims against [the] JV (and its members Blue Basket COA Inc. and Israel Choi):
>
> __ We find in favor of the Defendants.
>
> __ We find in favor of the Plaintiff Sierra Construction Co., Inc.
>
> If you find in favor of Sierra Construction as to this claim, state the amount of any damages you award to Sierra Construction against the joint venture and its members - _____.

During the charge conference, Israel objected to the verdict form as "confusing" and "drawing a finger" at him because it did not distinguish between the breach-of-contract claims against him and Blue Basket. However, after the verdict was announced, Israel made no objection to the form of the verdict.

A party must voice his "objection to a verdict form at the time of its rendition or otherwise such technicality is waived. This is so because a verdict may be reformed or remodeled in the presence of the jury before they have retired from the

6

box."[10] Although Max objected to the verdict form, Israel did not join in Max's objection.[11] Because Israel did not object to the verdict form at the time the jury returned its verdict, his claim of error as to this issue has been waived.[12]

2. Israel also contends that the trial court erred in charging the jury.

"It is the duty of the trial court, whether requested or not, to give the jury appropriate instructions on every substantial and vital issue presented by the evidence, and on every theory of the case. There need be only slight evidence supporting the theory of the charge to authorize a requested jury instruction."[13]

> [W]hen we decide whether a jury instruction should have been given, we do not allocate inferences and presumptions but merely examine the record to see if evidence was presented which created a substantial,

---

[10] *Torres v. Tandy Corp.*, 264 Ga. App. 686, 690 (3) (592 SE2d 111) (2003).

[11] See *Stephens v. State*, 307 Ga. 731, 735 (1) (b) (838 SE2d 275) (2020) ("[A]n objection raised by a co-defendant does not preserve the contested issue for another co-defendant unless that co-defendant expressly adopts or joins in the objection.").

[12] See *Harrison v. Martin*, 213 Ga. App. 337, 345 (2) (444 SE2d 618) (1994) (holding that a party, who submitted a special verdict form to the trial court but failed to object after the jury returned its general verdict, waived any objection to the form of the verdict); see also *Torres*, 264 Ga. App. at 690 (3) (holding that the appellant had waived her objection to the verdict form when she failed to object when the jury returned its verdict).

[13] *Game Truck Ga. v. Quezada*, 360 Ga. App. 519, 520 (1) (859 SE2d 125) (2021) (citations and punctuation omitted).

material, and controlling issue in the case. The test for whether such an issue was created is whether the evidence, if believed by a jury in accordance with the disputed jury instruction, would have affected the outcome.[14]

Importantly, "[t]he failure to charge on a properly asserted and legally cognizable theory of recovery or defense, whether requested or not, or attention be called to it or not, is harmful as a matter of law."[15]

As an initial matter, we note that Israel objected to the jury's charge on joint venture liability during the charge conference, but such an objection does not preserve this claim of error for appellate review because he failed to object to the

---

[14] *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 227 (1) (547 SE2d 637) (2001) (citation omitted), aff'd, 275 Ga. 145 (563 SE2d 116) (2002).

[15] *Game Truck Ga.*, 360 Ga. App. at 520 (1) (citation and punctuation omitted).

charge as given.[16] Accordingly, we review this claim of error only for "substantial error" pursuant to OCGA § 5-5-24 (c).[17]

> A charge constituting substantial error is one that is harmful as a matter of law — i.e., blatantly apparent and prejudicial to the extent it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it, or a gross injustice is about to result or has resulted directly attributable to the alleged errors.[18]

---

[16] See *Christie v. Rainmaster Irrigation*, 299 Ga. App. 383, 387 (1) (682 SE2d 687) (2009) ("In civil cases, exceptions or objections to charges must be made after the jury is charged and before the verdict; objections made at charging conferences before the charge is given do not preserve charging issues for appellate review.") (citation, punctuation and footnote omitted). In his reply brief, Israel argues that it should be unnecessary for a party to restate his objections to a jury charge when he has raised the objection during the charge conference and been overruled. We are not persuaded. Although the specific grounds for the objection need not be restated after the charge is given, the charge must be excepted to at that time in order to preserve the issue for appeal. See *McDowell v. Hartzog*, 292 Ga. 300, 302 (736 SE2d 395) (2013) (holding that objection was preserved for appeal when the "appellants distinctly stated their objection at the charge conference, excepted to the charge as given on the same ground, and the trial court clearly understood the basis of their objection").

[17] OCGA § 5-5-24 (c) provides: "Notwithstanding any other provision of this Code section, the appellate courts shall consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not."

[18] *Maki v. Real Estate Expert Advisors*, 358 Ga. App. 337, 340 (1) (855 SE2d 72) (2021) (punctuation and footnote omitted).

9

Given this high bar, instances of reversal under OCGA § 5-5-24 (c) are "very, very rare."[19]

Turning to the instant case, under Georgia law,

[m]embers of a joint adventure are liable on a contract entered into by a member pursuant to authority conferred on him by his associates. Substantially the same rules with respect to principal and agent applicable to members of a partnership apply to members of a joint adventure with respect to contracts with third persons within the scope of the joint enterprise, and a joint adventurer may bind his associates by a contract which is in furtherance, or within the scope, of the joint enterprise.[20]

Moreover, "[t]he question of whether or not the facts proved show a joint adventure between the parties as well as whether or not the act done is within the scope of the enterprise so as to bind the other party thereto is generally a jury question."[21]

Here, Max testified both that Blue Basket was acting on behalf of the JV when it entered into the construction contract with Sierra and that Blue Basket, not the JV,

---

[19] Id. at 340-341 (1) (punctuation and footnote omitted).

[20] *Murphey, Taylor & Ellis v. Williams*, 223 Ga. 99, 102-103 (2) (153 SE2d 542) (1967) (punctuation omitted).

[21] Id. at 104 (4) (citation and punctuation omitted).

10

hired Sierra, and he did not intend to bind the JV to the contract with Sierra. Specifically, Max testified that "working with Sierra . . . wasn't part of the joint venture agreement[.]" Israel testified that he was willing to let the JV "borrow" his restaurant experience so that it could submit a bid that met the City's requirements. Israel also testified that he had no idea that the JV had been awarded the lease, he had no intention of participating in the concession business, and he argued that the JV was created only to submit the bid.

The trial court agreed that the evidence was disputed as to whether the construction contract with Sierra was part of the business of the JV. Accordingly, in order to find Israel liable on the contract between Blue Basket and Sierra, the jury would have had to find the contract to be "in furtherance" or "within the scope" of the JV.[22]

As to this issue, the trial court instructed the jury:

Under the law of Georgia a joint venture is a form of partnership, and under the law of Georgia a partner in a joint venture is liable for the wrongful acts of its partner committed in the ordinary course of business of the joint venture and cannot avoid the liability by an agreement between the . . . partners that one of the partners will carry out the

---

[22] See *Murphey, Taylor & Ellis*, 223 Ga. at 103 (2).

business of the joint venture separate from the other . . . partners[.] Partners in a partnership are jointly and severally liable for all debts, obligations, and liabilities of the partnership.

Israel argues that the charge did not allow the jury to find in his favor if they determined that Blue Basket did not enter into the construction contract in furtherance of the JV. Rather, he contends, the instruction allowed the jury to find him liable for Blue Basket's "wrongful acts" and implied that he was liable for Blue Basket's debts whether or not the debts were in furtherance of the joint venture. Sierra contends that the jury charge was an accurate statement of law,[23] properly tailored to the facts of this case.

Here, it was undisputed that Israel and Blue Basket entered into a joint venture. However, the extent of the venture was disputed, and, specifically, there was conflicting evidence as to whether the construction contract was entered into on behalf of the JV. Yet the court instructed the jury that Israel was liable for the "wrongful acts" of Blue Basket "committed in the ordinary course of business" and

---

[23] See *Accolades Apts. v. Fulton County*, 274 Ga. 28, 29 (549 SE2d 348) (2001) ("The theory of joint venturers arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other.") (citation omitted).

12

that Israel was "jointly and severally liable for all debts[.]" Thus, the charge allowed the jury to find Israel liable based on Blue Basket's wrongful acts without deciding whether the construction contract was in furtherance or within the scope of the JV. Given the circumstances of this case, including the undisputed evidence that Max and his parents were using Blue Basket corporate funds to pay their personal expenses, we conclude that this charge was harmful as a matter of law, deprived Israel of a fair trial, and constituted substantial error.[24] Moreover, although Sierra argued that the JV was liable for the contract because the construction was undertaken for the benefit of the JV, no portion of the charge so instructed the jury.[25]

"While we are reluctant to disturb any jury's verdict, a new trial must be granted when a trial court deprives a defendant of a theory of defense by failing to

---

[24] See *Maki*, 358 Ga. App. at 341-342 (1) (concluding that the jury charge, which omitted the likelihood-of-confusion test, was harmful as a matter of law when likelihood of confusion was the central inquiry in the case); see also *Game Truck Ga.*, 360 Ga. App. at 521-522 (holding that the trial court should have instructed the jury on assumption of the risk when there was some evidence that the injured party purposely ran directly toward another student).

[25] See *Game Truck Ga.*, 360 Ga. App. at 520 (1) ("It is also necessary to decide whether the law given in the disputed charge was adequately explained by other portions of the trial court's instruction.") (citation and punctuation omitted).

13

give a charge that is sustained by the evidence."[26] Accordingly, we must reverse the judgment of the trial court, and Israel must be granted a new trial.

3. Finally, in the body of its appellee's brief, Sierra requests that we impose a frivolous appeal sanction against Israel pursuant to OCGA § 5-6-6. Our rules plainly provide that no motions shall be filed in the body of the parties' briefs.[27] Accordingly, we decline to consider Sierra's request.[28]

*Judgment reversed. Doyle, P. J., and Senior Appellate Judge Herbert E. Phipps concur.*

---

[26] *Game Truck Ga.*, 360 Ga. App. at 522 (1) (citation and punctuation omitted).

[27] Court of Appeals Rule 41 (b).

[28] See *Johnson v. Johnson*, 349 Ga. App. 99, 101 (3) (825 SE2d 487) (2019).