45309.   GUARANTY TITLE INSURANCE COMPANY
v. WILSON.

PANNELL, Judge. This was an action, denominated an action for money had and received brought by a real estate broker against the closing agent (which was also the title insurer) seeking recovery of real estate commissions on certain contracts for sale of real estate attached to the petition as an exhibit. On the trial, it appeared that the complainant and other real estate brokers co-operated in getting together contiguous parcels for sale to a single purchaser. The earnest money, in the form of a check, was turned over to one of the brokers for deposit in his escrow account. Subsequently, because the old contracts had expired, new ones were executed by the sellers and the purchaser, which recited that the earnest money in each contract had been deposited with the same broker. These were the contracts attached to the complaint. At the time set for closing, the broker with whom the earnest money had been deposited was unable to produce the funds; however, the closing was had, deeds executed and delivered, and the defendant closing agent issued checks for the commissions for which complainant seeks

recovery, but these checks, at the request of the purchaser, with no objections from the sellers were not delivered to complainant. The closing statements showed the earnest money was "refunded." The testimony, however, was to the contrary. The purchaser, according to the closing statements, apparently made good the loss by paying the purchase price without deducting therefrom as a credit the earnest money previously deposited. It is shown without dispute that the seller was to pay the particular commissions of the complainant and the closing statements show funds therefor were deposited with the defendant closing agent by the sellers. It is undisputed the defendant still has the funds and has no claim of its own thereto. At the close of the plaintiff's testimony, the defendant made a motion for nonsuit on the ground that the plaintiff's own testimony showed he had not ratified or acquiesced in the contract sued upon. This motion was overruled and at the close of all of the evidence, the trial judge directed a verdict for the complainant. The defendant closing agent appealed to this court, enumerating both the rulings as error. *Held:*

1. That the particular contracts of sale attached to the petition, some of which provided for the division of the real estate commissions and for complainant's share thereof, had not been expressly approved or ratified by the complainant broker, as he so testified, would not prevent a recovery by him of the commissions so provided therein and in the closing statements signed by the purchaser and the sellers similarly providing for the division of the commission and the complainant's share as to all of the transactions. The bringing of this action, seeking recovery of such commissions paid to the stakeholder defendant by the sellers for distribution was a sufficient ratification of the division of the commissions by the complainant and the other brokers, if any be needed. See *Code Ann.* § 3-108. There was therefore no error at the conclusion of the plaintiff's evidence in overruling defendant's motion for "nonsuit."

2. Assuming, without deciding, that the real estate brokers were engaged in a joint venture and that the complainant, as a result thereof, was liable to the purchaser for the default of the broker with whom the earnest money was deposited, this would

constitute no defense by the defendant stakeholder for its refusal to pay the complainant funds held by it and paid by the sellers under its obligation to pay complainant's commission. The stakeholder cannot, as against a claimant entitled to the fund, set up as a defense a debt owed by the claimant to another, for which the stakeholder is in no way liable either primarily or secondarily or in an action over, in the event of disbursement to the claimant of the funds so held. The trial court did not err in directing a verdict for the claimant and in overruling the motion for new trial based on the alleged error in the directing of the verdict.

*Judgment affirmed. Bell, C. J., Jordan, P. J., Hall, P. J., and Whitman, J., concur. Deen, Quillian, and Evans, JJ., dissent. Eberhardt, J., disqualified.*

ARGUED MAY 5, 1970—DECIDED NOVEMBER 24, 1970.

*Wall & Campbell, Alford Wall,* for appellant.
*McCord, Cooper & Voyles, Charles M. Voyles,* for appellee.

EVANS, Judge, dissenting. I cannot agree to the majority's statement of the facts of this case that "it is shown without dispute that the seller was to pay the particular commissions of the complainant and the closing statements show funds therefor were deposited with the defendant-closing agent by the sellers." This is not borne out by the facts since the purchaser put up the same funds (earnest money) twice in order to close. I therefore dissent from the findings of the majority opinion based upon this statement of the facts which I believe to be erroneous. I therefore set out a statement of the facts as I find them.

Electrical Workers Home Association of Atlanta, Inc. wanted certain real property for a building to house union activities of various union affiliates. A Mr. Naulter (or Naulta), a real estate salesman for L. A. Wilson, Broker, d/b/a Suburban Real Estate Agency, the plaintiff herein, contacted the corporation, or was contacted by an officer thereof, with reference to the purchase of a number of small tracts or lots of land in order to obtain a complete city block for the construction of the building and parking area. The plaintiff or his salesman and agents contacted and co-

operated with several real estate brokers in an effort to obtain sale contracts for the purchase of the land in this city block. One of the real estate agencies contacted was Paramount Realty Investment Co., Inc., of which one J. L. Wolfe was the broker and owner, and also the owner of property in the area sought to be purchased. Wilson and Wolfe, through their real estate companies, agreed to co-operate in getting sale contracts from the owners of the various properties in this city block, agreeing to share commissions. Generally, the sale contracts involved here were negotiated with the owners by Paramount Realty Investment Co., Inc., Broker and/or J. L. Wolfe, with special stipulations as to the commissions to be paid Suburban, Paramount, and other brokerage concerns who are not involved in this suit. Most of these contracts were drawn by using the standard form of contract of Paramount, or Wolfe, which is similar to those used in the Atlanta area, making the real estate broker, Paramount, or Wolfe, a party to the contract, calling for payments of earnest money to the broker, to be applied on the purchase price at the time the sale is consummated, and the commission to the broker to be calculated as a percentage of the sale price. The real estate broker became a party to the contract and was, in effect, an agent for both the buyer and the seller, as well as having an interest in the contract. The contracts generally called for the commission to be pro-rated among the broker, Wolfe or Paramount, and the participating brokers, with the commission based upon percentages of the total sale price. Paramount, through its agent and broker Wolfe, and Suburban, through its owner and broker Wilson, were the prime movers in obtaining the contracts between the sellers and the purchaser. The earnest money in a lump sum ($8,400) was paid to Paramount, or Wolfe, pending the closing of the transaction. Wilson acquiesced in this payment to Paramount by the prospective purchaser of the properties. Wolfe, or Paramount, became insolvent—at least the money was not forthcoming, and at the closing of these transactions Guaranty Title Insurance Company, the title insurer, acted as escrow agent for Electrical Workers which desired to purchase the properties. The properties were closed and on the closing statement the entire amount was paid by Electrical Workers, showing earnest money "refunded," al-

though it is uncontested that no money was ever refunded, but was in the hands of Wolfe, or Paramount. The defendant Guaranty Title Insurance Company was advised by Electrical Workers who paid all the sale price involved to hold in escrow all commissions pending the refund by Paramount, or Wolfe, with the sellers receiving their sale price less the commissions and other charges for taxes, etc. The sellers are not involved in this litigation. Wilson, d/b/a Suburban, sued Guaranty for money had and received for its share of the commissions as the beneficiary of the real estate contracts here involved. The case proceeded to trial, and after hearing the evidence before a jury, the court directed a verdict against Guaranty. A motion for new trial as amended was filed, heard, and overruled, and the appeal is from that judgment, with error enumerated here as to the granting of plaintiff's motion for directed verdict and failing to correct its error by overruling the amended motion for new trial, as well as a complaint that the court erred in failing to grant a nonsuit when plaintiff stated in his oral testimony that he did not ratify the various contracts of which he was a beneficiary for commissions.

It is quite clear from the evidence that this was a joint venture between Wilson as Suburban, and Wolfe as Paramount, as co-operating brokers to obtain the various contracts for sale to Electrical Workers. I cannot agree that the sum sought against the defendant was for money it had received as a stake-holder to pay commissions earned by the various brokers involved, because a considerable amount ($8,400) of this money was in the hands of the broker (Wolfe/Paramount) who collected it originally and has not paid it back and is still holding it for his joint adventurers.

"When one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury shall bear the loss." *Code* § 37-113; *Alexander v. State of Ga.,* 56 Ga. 478, 482; *Frye v. Commonwealth Invest. Co.,* 107 Ga. App. 739, 744 (131 SE2d 569); *McDonald v. People's Auto Loan &c. Corp.,* 115 Ga. App. 483, 488 (154 SE2d 886).

Wilson was aware the money had been paid to his joint adventurer, and he admits he acquiesced in Paramount, or Wolfe, holding the money for the brokers, including his firm. There was not only a joint interest of Wilson and Paramount (Wolfe) in the ob-

jects and purposes of the undertaking here but there also existed an equal right, express or implied, to direct and control the conduct of each other. See *Holland v. Boyett,* 212 Ga. 458 (93 SE2d 662); *Security Devel. &c. Co. v. Williamson,* 112 Ga. App. 524 (145 SE2d 581).

While I agree the escrow agent for Electrical Workers could not "set up a defense of a debt owed by the claimant to another" yet Guaranty was not paid the money to pay the commissions twice, but to pay such funds when and if the earnest money paid to the broker as joint adventurer with the other brokers was fully satisfied. *Code* §§ 20-1001, 75-302; *Clement A. Evans & Co. v. Waggoner,* 197 Ga. 857 (1c) (30 SE2d 915); *Puckett v. Reese,* 203 Ga. 716 (48 SE2d 297). It may be under the evidence, that all the commissions earned are greater than the earnest money received by the prime broker (Wolfe/Paramount), and, if so, a jury question remains whether all the commissions earned had been paid in the earnest money collected and held by the prime broker. Electrical Workers was very desirous of purchasing the properties, and in doing so advanced the earnest money twice, in order to hold the sellers and Guaranty harmless. In fact, there was testimony that Electrical Workers agreed to indemnify Guaranty for any loss involved. Since the money sought as money had and received is the property of Electrical Workers, unless it can be shown that all the commissions due the plaintiff were not paid in the payment of the earnest money, none of the escrow money belongs to the plaintiff, and he has no claim to it. However, if the plaintiff shows in this evidence that some part of the funds held in escrow by Guaranty belong to him, and that the same had not already been paid to his joint adventurer, Paramount (Wolfe), he could be entitled to a judgment for such amount. But, the evidence did not demand a verdict, and I cannot agree to the theory of the majority. I therefore dissent since I would reverse the judgment.

I am authorized to state that Judges Deen and Quillian concur in this dissent.